Ray THARALDSON, Plaintiff, Appellee,
and Cross-Appellant,

v.

UNSATISFIED JUDGMENT FUND, De-
fendant, Appellant, and Cross-Appellee.

Civ. No. 8903.

Supreme Court of North Dakota.

Dec. 19, 1974.

Lundberg & Nodland, Bismarck, for plaintiff, appellee, and cross-appellant.

John M. Olson, Sp. Asst. Atty. Gen., Bismarck, for defendant, appellant, and cross-appellee.

ERICKSTAD, Chief Justice.

The appellant, the North Dakota Unsatisfied Judgment Fund, hereinafter the Fund, has appealed from a judgment and order of the Burleigh County District Court, entered December 13, 1973, wherein it was ordered that the Fund pay to the appellee, Ray Tharaldson, $5,000 for bodily injury to Tharaldson, $8,675.20 as costs for medical expenses of Tharaldson, $2,000 as costs for attorney's fees, and $19 in statutory costs, for an aggregate judgment of $15,694.20. Tharaldson cross-appeals from that part of the district court's order which limits his recovery for bodily injury to $5,000.

There is no dispute as to the facts of this case. On June 24, 1972, Tharaldson was walking across a street in Bismarck, North Dakota, at a designated pedestrian crossing when he was struck and severely injured by a motor vehicle. The driver of the motor

vehicle fled from the scene of the accident before his identity could be ascertained. Unable to obtain relief from the unknown driver, Tharaldson commenced this action against the Fund, pursuant to Chapter 39–17, N.D.C.C.

The Fund asserts that the trial court erred in awarding, as costs, the sums expended by Tharaldson for medical treatment and for attorney's fees. It contends that only statutory costs may be awarded to a plaintiff who recovers a judgment against the Fund. Tharaldson maintains that the district court properly awarded such sums as costs, either pursuant to statutory approbation, or as an exercise of an inherent judicial power to administer justice. We hold that the district court erred when it awarded, as costs to Tharaldson, $8,765.20 in medical expenses and $2,000 in attorney's fees.

■ We have often stated, although in somewhat varying language, that costs are purely the creature of statute, and, absent statutory authorization, an allowance therefor cannot be made by a trial court. City of Fargo v. Annexation Review Commission, 148 N.W.2d 338 (N.D.1966); United Development Corp. v. State Highway Dept., 133 N.W.2d 439 (N.D.1965); Gunsch v. Gunsch, 67 N.W.2d 311 (N.D.1954). The district court apparently relied upon Section 39–17–03.1, N.D.C.C., as authority for awarding the costs in question:

"39–17–03.1. Recovery from fund when liability cannot be determined.— When bodily injury to, or the death of, any person who is a resident of this state is occasioned by or arises out of an accident caused by the operation, maintenance, or use of a motor vehicle in this state and the identity of the person or persons against whom an action might be brought for the recovery of damages for the bodily injury or death resulting from the accident cannot be ascertained, any person who would be entitled to bring such action to recover damages may bring an action in the district court of the county in which the accident occurred within six months from the date of the accident against the state unsatisfied judgment fund, by service upon the state highway commissioner, for the recovery of such damages from such fund, provided notice of such accident was given to some police officer immediately after the accident occurred and the name of such officer shall be alleged in the complaint. No payment shall be made from the fund in satisfaction of any judgment obtained in such action in excess of five thousand dollars, *exclusive of costs,* for bodily injury to, or the death of, any one person, nor in excess of ten thousand dollars for any one accident.

"Nothing in this section shall limit the liabilities or remedies of any person on the cause of action, growing out of the accident for which suit was brought against the fund, but the fund shall be subrogated pro tanto to the rights of any person who has obtained judgment under the provisions of this section, to the extent that the fund has made payment in satisfaction thereof." (Emphasis supplied.) § 39–17–03.1, N.D.C.C.

■ Tharaldson asserts that the italicized language is the basis of the trial court's action. He argues that since costs are generally provided for in civil cases by § 28–26–02, N.D.C.C.,[1] the addition of the itali-

1. "28–26–02. Amount of costs in specific cases.—Costs in the district courts and in the supreme court shall be as follows:
    "1. To the plaintiff for all proceedings before trial, ten dollars, and for each additional defendant served with process not exceeding ten, one dollar;
    "2. To the defendant, for all proceedings before trial, five dollars;
    "3. For every trial of an issue of fact, five dollars;
    "4. To either party on appeal to the supreme court before argument, five dollars, for argument, fifteen dollars, and when a judgment is affirmed, the court in its discretion also may award damages for the delay, not exceeding ten percent on the amount of the judgment; and

cized language in § 39–17–03.1, N.D.C.C., evidences an intent by the Legislature to authorize something more than those costs that are generally authorized. To decide otherwise, it is argued, would be to render superfluous the phrase "exclusive of costs."

■ We do not find this argument to be persuasive. Read in the context of the statute, the phrase "exclusive of costs" appears to us to mean only that the Legislature intended to allow statutory costs as a supplement to—and not as a part of—the maximum amount recoverable from the Fund.

When the Legislature intends to afford a litigant costs other than those normally awarded, it makes its intent abundantly clear. The statutes cited by Tharaldson in support of the trial court's order offer evidence of this fact. An example is § 32–16–45, N.D.C.C., the pertinent part of which reads: " * * * The costs of a partition, including reasonable counsel fees, * * * must be paid * * *" Other examples could be cited, but we shall not belabor the point.

Tharaldson additionally asserts that the courts of North Dakota possess an inherent, constitutional power to award costs as an incident of the administration of justice, notwithstanding any statutory limitations. He refers us to Bucklin, Forgotten Ideas About Motions, 46 N.D.L.Rev. 189 (1970), wherein the author argues that the courts may award costs in excess of statutory limitations, in order to regulate motion practice. Also cited by Tharaldson is the case of Aune v. City of Mandan, 166 N.W.2d 559 (N.D.1969), where this court made the denial of a motion to dismiss an appeal contingent upon the payment of $75 in motion costs by the appellant.

■ Costs may be permitted by rule of this court pursuant to its inherent and statutory authority. No such rule is applicable to this case.

We shall now turn to the contention that is the subject of Tharaldson's cross-appeal, i.e., that the limit of recovery against the Fund for bodily injury to one person is $10,000, and that the district court erred when it limited to $5,000 the amount it ordered the Fund to pay to Tharaldson. The basis of this contention is that the amount of recovery is limited by Section 39–17–07, N.D.C.C., and not by 39–17–03.1, N.D.C.C. Section 39–17–07, N.D.C.C., reads:

"39–17–07. Limitation on amount payable from fund—Nonassignable.—1. Recovery from the fund shall be limited to payment of the following, exclusive of costs:

"a. Ten thousand dollars for bodily injury, including death, of one person in any one accident.

"b. Twenty thousand dollars for bodily injury, including death, of two or more persons in any one accident.

"2. The amount authorized to be paid shall be within the limits provided by this section, and shall be determined as follows:

"a. If the judgment creditor has effected collection of a portion of the judgment from any source, except as provided for in subdivision b of subsection 2 of this section, the fund is authorized to pay him the difference between the amount collected and the amount of the judgment, or ten thousand dollars, whichever is smaller. Provided, if the judgment creditor or creditors have collected an amount equal to the limits payable from the fund from the insurance or nonexempt assets

"5. To either party for every term not exceeding five, at which the cause is necessarily on the calendar of the district court and is not tried or is postponed by order of the court, three dollars, and for every term not exceeding five, excluding the term at which the cause is argued in the supreme court, five dollars. Term fees are not taxable as costs when a cause, properly on the calendar, is not reached for trial during the term, nor in case a continuance is had upon the application of, or stipulation with, the party in whose favor costs are to be taxed."

of the judgment debtor, then they are precluded from recovery from the fund.

"b. If the judgment creditor has effected collection of a portion of the judgment from an uninsured motorist insurance policy or payment from the workmen's compensation bureau, then the amount collected from these sources shall be subtracted from the judgment before the procedure outlined in subdivision a of subsection 2 of this section is followed.

"The right of any person to recover from the unsatisfied judgment fund shall not be assignable and subrogation of such right shall not be allowed." Section 39–17–07, N.D.C.C.

Inasmuch as Tharaldson's argument is founded upon certain principles of statutory construction, a review of the development and relationship of the two statutes involved in this case may facilitate understanding of his position.

In 1947 the Legislature established, by the enactment of Session Laws 1947, Chapter 274, the North Dakota Unsatisfied Judgment Fund. Section 7 of that chapter is the original source of Section 39–17–07, N.D.C.C. It reads:

" * * * No Order shall be made by the Court directing the payment of more than $5,000.00, exclusive of costs, in the case of a judgment resulting from bodily injury to, or the death of, one person in one accident, nor, subject to such limit of $5,000.00 for each person so injured or killed in one accident, shall an Order be made directing the payment of judgments for more than $10,000.00, exclusive

of costs, in cases arising out of one accident." 1947 S.L., Ch. 274, § 7.

Until 1951, no provision existed for recovery from the Fund in those cases where the identity of the tort-feasor could not be ascertained. With the passage of Session Laws 1951, Chapter 258, Sections 1 and 2, the present "hit-and-run" provision, as codified in Section 39–17–03.1, N.D.C.C., came into existence. The limit of recovery was set at its present level of $5,000. The statute has not since been expressly amended.

In 1963 the Legislature amended Section 39–17–07, N.D.C.C., to limit recovery to $10,000 for bodily injury of one person in one accident and $20,000 for bodily injury of two or more persons in one accident.[2]

Tharaldson maintains that it was the intent of the Legislature to provide equal compensation under Sections 39–17–07 and 39–17–03.1, N.D.C.C., as had been done from 1951 to 1963; that it was simply an oversight on the part of the Legislature when it failed to amend Section 39–17–03.1 to bring it into conformance with the amended Section 39–17–07, N.D.C.C. With this intent as a given factor, Tharaldson argues that, as a matter of statutory construction, Section 39–17–07 must prevail over 39–17–03.1, citing for support, Section 1–02–07, N.D.C.C.:

"1–02–07. Particular controls general. —Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special

**2.** "§ 2. Amendment.) Section 39–17–07 of the North Dakota Century Code is hereby amended and reenacted to read as follows: "39–17–07. Limitation on Amount Payable from Fund.) No order shall be made by the court directing the payment of more than ten thousand dollars, exclusive of costs, in the case of a judgment resulting from bodily injury to, or the death of, one person in one accident, nor, subject to such limit of ten thousand dollars for each person so injured or killed in one accident, shall an order be

made directing the payment of judgments for more than twenty thousand dollars, exclusive of costs, in cases arising out of one accident. In cases where the judgment creditor has effected the collection of a part of his judgment from any source, the amount authorized to be paid from such fund shall be the difference between the amount of the judgment, provided that it does not exceed ten thousand dollars, and the amount realized thereon;" 1963 Session Laws, Chapter 282, Section 2.

provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

We do not agree that this statute, or any other principle of statutory construction, compels the result that Tharaldson advocates. What Tharaldson is arguing, in substance, is that Section 39–17–07, N.D.C.C., impliedly repealed that part of Section 39–17–03.1, N.D.C.C., that sets the maximum amount of recovery for bodily injury of one person at $5,000 and replaced it with the $10,000 limitation.

Implied amendments and implied repeals are not favored:

"An implied amendment is an act which purports to be independent of, but which in substance alters, modifies, or adds to a prior act. To be effective, an amendment of a prior act ordinarily must be expressed. Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases. The legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together.

"Amendment by implication is identical with repeal by implication when only part of the prior statute is repealed. The latter characterization is most often applied to this situation." [Footnotes omitted.] See Sands' Sutherland Statutory Construction, Vol. 1A, Section 22.13, at 139 and 149 (4th Ed. 1972).

■ This court early delineated one of the bases for this principle in the case of State ex rel. Coghlan v. Poindexter, 49 N.D. 201, 190 N.W. 818 (1922), where it said:

"Repeals by implication are not favored.

'It is a reasonable presumption that all laws are passed with a knowledge of those already existing, and that the Legislature does not intend to repeal a statute without so declaring.'" (Citation omitted.) State ex rel. Coghlan v. Poindexter, 190 N.W. 818, supra, at 819.

■ This presumption against implied repeal is strengthened when the Legislature states that it is changing a specific prior law (as in Section 1 of Chapter 282, 1963 S.L. where it said "Section 39–17–01 * * is hereby amended and reenacted to read * * *"), as opposed to when it enacts what it intends to be original legislation. Cf. Sands' Sutherland Statutory Construction, Vol. 1A, Section 23.11 (4th Ed. 1972).

■ The burden borne by Tharaldson is great. To overcome the presumption against an implied repeal, it must be shown that " * * * the conflict between the two provisions is irreconcilable * * *" Section 1–02–07, N.D.C.C., supra. As stated in the case of First American Bank & Trust Company v. Ellwein, 198 N.W.2d 84 (N.D.1972):

"There must be a clear repugnancy between the provisions of the new law and the old statute to such an extent that a necessary implication arises that the legislature by enactment of the latter Act intended to repeal the former, and then only to the extent of its repugnancy." (Citations omitted.) First American Bank & Trust Company v. Ellwein, 198 N.W.2d 84, at 98 (1972), supra.

■ We do not find a clear repugnancy between Sections 39–17–07 and 39–17–03.1, N.D.C.C., so as to justify holding that the former impliedly repealed the latter. The statutes are not so related that a change in one results in a repugnancy if the other is not likewise changed.

Our holding that the 1963 amendment to Section 39–17–07, N.D.C.C., did not impliedly repeal Section 39–17–03.1, N.D.C.C., brings us to the second of Tharaldson's contentions, i.e., that a statutory scheme that provides differing amounts of recovery to accident victims based on whether the vic-

·tims are able to identify their tort-feasors is unconstitutional, being in violation of the 14th Amendment to the United States Constitution. It is Tharaldson's position that there is no constitutionally permissible basis for distinguishing between the two types of plaintiffs who are allowed to recover from the Fund; that the classification is arbitrary and capricious.

In determining the constitutionality of Section 39–17–03.1, N.D.C.C., we are guided by certain principles of constitutional law enunciated in past decisions of this court. In a recent case, we quoted from an earlier decision saying:

" 'It is also well established that a classification although discriminatory is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. [Citations omitted.] Furthermore, a court need not know the special reasons, motives, or policies of a State legislature in adopting a particular classification, so long as the policy is one within the power of the legislature to pursue, and so long as the classification bears a reasonable relation to those reasons, motives, or policies.' Signal Oil and Gas Company v. Williams County, 206 N.W.2d 75 at 83 (N.D.1973)." Snyder's Drug St., Inc. v. North Dakota St. Bd. of Ph., 219 N.W.2d 140 at 148 (N.D.1974).

In *Snyder's Drug*, we upheld a classification which distinguished between applicants for a permit to operate a pharmacy on the basis of whether the majority of the stock of the corporate applicant was owned by registered pharmacists.

What we said in City of Bismarck v. Materi, 177 N.W.2d 530 (N.D. 1970), seems relevant. In that case we upheld, against a challenge that it violated the 14th Amendment to the United States Constitution, a city ordinance that generally prohibited businesses from operating on Sundays, but which allowed grocery stores regularly employing no more than three employees to operate on Sundays. The following is taken from the syllabus of that decision:

"3. The Fourteenth Amendment to the United States Constitution permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than they affect others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.

"4. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.

"5. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

"6. The problem of legislative classification admits of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." City of Bismarck v. Materi, 177 N.W.2d 530 (N.D.1970).

In Johnson v. Hassett, 217 N.W.2d 771 (N.D.1974), we discussed the two levels of examination alternately employed under the Equal Protection Clause. We stated that:

"On the one level there has been a group of cases involving 'inherently suspect' or 'fundamental interest' classifications, which are 'subjected to strict judicial scrutiny.' Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, plurality opinion (1973); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The suspect classifications include those based upon some 'immutable characteristics determined solely by the accident of birth' such as race, national origin, sex, or illegitimacy,' which violate 'the basic concept of our

system that legal burdens should bear some relationship to individual responsibility.' *Frontiero, supra*; Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

"At the other level, which involves non-suspect classifications, the Supreme Court has used the 'traditional' equal-protection analysis, * * *'" Johnson v. Hassett, 217 N.W.2d 771 at 775 (N.D.1974).

■ In this case, there being neither an "inherently suspect" classification of the nature discussed in *Frontiero, supra*, nor a "fundamental interest" such as the right to travel discussed in *Shapiro, supra*, we believe the "traditional" equal-protection approach utilized in *Snyder's Drug* and *City of Bismarck* is the applicable standard by which the present statutory classification is to be measured.

■ The evident purpose of Section 39–17–03.1, as of 39–17–07, N.D.C.C., is to provide some compensation to victims of automobile accidents who would otherwise be left without a means of recovery. The amount to be given to the Fund, the allocation among recipients, the amount of state funds available, the number of other State functions in need of money, and other considerations are matters within the competency of the Legislature.

■ When the Legislature, in 1963, raised the maximum recovery under Section 39–17–07, N.D.C.C., to $10,000, it attempted to further alleviate the plight of accident victims who had no other source of recovery. In light of the inflationary times in which we live, this amount may also seem inadequate and accordingly the allowance under Section 39–17–03.1, N.D.C.C., even more so, but the Legislature is not required to remedy all inequities at once or as we see them. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 at 760 (N.D.1966).

The Legislature may have thought that an increased amount given to plaintiffs injured by known, but insolvent, judgment debtors was justified because the State at least has a possibility of recovering something from a known judgment debtor but cannot recover anything from an unknown hit-and-run driver.

The Legislature may have thought that permitting the same amount of recovery in hit-and-run cases as in other cases would encourage injured parties in certain instances to avoid naming known defendants to permit easier recovery or to protect the defendants from civil suits and criminal prosecution.

■ We do not presume to know the exact reasons for the Legislature's actions. The considerations cited are possible, reasonable, and further the purpose of the statute in question. Under the principles delineated earlier in this opinion, this is sufficient to protect the statute from a challenge of unconstitutionality. Accordingly, we hold that Section 39–17–03.1, N.D.C.C., is not violative of the 14th Amendment to the United States Constitution.

We therefore affirm that part of the district court's order that limited the amount to be paid to Tharaldson for his bodily injuries to $5,000. We reverse that part of the order that awarded, as costs, $8,675.20 for medical expenses, and $2,000 for attorney's fees. The award of $19 in statutory costs has not been challenged, and is affirmed.

Affirmed in part and reversed in part.

VOGEL, JOHNSON, PAULSON and KNUDSON, JJ., concur.