STATE of North Dakota, Plaintiff/Appellee,

v.

Marvin HAGGE, Defendant/Appellant.

Cr. No. 485.

Supreme Court of North Dakota.

Dec. 20, 1974.

Jon R. Kerian, of Bosard, McCutcheon, Kerian, Schmidt & Holum, Minot, for defendant and appellant.

Richard B. Thomas, State's Atty., Minot, for plaintiff and appellee.

PAULSON, Judge.

The defendant, Marvin Hagge, has appealed to this court from the verdict of guilty and final judgment upon a conviction of the crime of manslaughter in the first degree in the Ward County District Court, as well as from the order denying a motion for a new trial.

This is the second time we have considered this case. Our first opinion can be found in State v. Hagge, 211 N.W.2d 395 (N.D.1973).

A motorist, on the evening of June 8, 1972, reported an accident involving a boy

on a bicycle and a red pickup truck with a white camper top. In the course of investigating such accident report, Mitchell Zietz, age 10, was found lying in a ditch on the eastbound side of U. S. Highway No. 52, approximately one-half mile west of Burlington. The boy was unconscious and died shortly after being taken to a Minot hospital.

On the following evening, June 9, 1972, Highway Patrolman Robert Willenbring observed a pickup, resembling the vehicle reportedly involved in the accident, parked, unattended, in Burlington. Upon closer inspection, Patrolman Willenbring noted that the right front fender and grill of the pickup had been damaged. He then waited for the driver of the pickup to return. When Marvin Hagge, a contract mail carrier, returned to his pickup, Patrolman Willenbring asked Mr. Hagge several questions and, based upon the answers to such questions, he took Mr. Hagge into custody. Patrolman Willenbring informed Mr. Hagge of his constitutional rights at the time that Mr. Hagge was taken into custody.

Mr. Hagge and his pickup were then driven to the Highway Patrol Office in Minot, where Mr. Hagge was formally arrested, given an additional *Miranda* warning, and questioned by Patrolman Willenbring and Officer Donald Schneider. Mr. Hagge was permitted to call his wife and he made several attempts to call an attorney but was not successful in contacting such attorney.

Mr. Hagge was charged by information with the crime of manslaughter in the first degree:

"That at the said time and place the said Marvin Hagge did willfully, unlawfully and feloniously without design to do so, effect the death of Mitchell Zietz, while the said Marvin Hagge was engaged in the commission of a misdemeanor. That the said misdemeanor which the said Marvin Hagge was engaged in the commission of was Careless Driving in violation of Section 39–09–01 of the North Dakota Century Code, to-wit: that the said Marvin Hagge drove a motor vehicle on U. S. Highway # 52, approximately one-half mile west of Burlington, North Dakota, in a manner to endanger the life, limb or property of any person in violation of Section 12–27–17 of the North Dakota Century Code . . . ."

While Mr. Hagge raises several specifications of error in his appeal, one of his contentions is determinative in the case at bar. Mr. Hagge argues that the Legislature, by enacting § 12–27–35, N.D.C.C., has excluded cases of homicide by motor vehicles from the broad misdemeanor-manslaughter rule set forth in § 12–27–17, N.D. C.C. The pertinent portions of applicable statutes are the following:

39–09–01, N.D.C.C. [1971 S.L., ch. 374, § 1]. *"Care required in operating vehicle.* —Any person driving a vehicle upon a highway shall drive the same in a careful and prudent manner, having due regard to the traffic, surface, and width of the highway and other conditions then existing, and shall give such warnings as are reasonably necessary for safe operation under the circumstances. No person shall drive any vehicle upon a highway in a manner to endanger the life, limb, or property of any person."

12–27–17, N.D.C.C. " *'Manslaughter in first degree' defined.*—Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor; . . . ."

12–27–18, N.D.C.C. *"Punishment for manslaughter in first degree.*—Every person convicted of manslaughter in the first degree shall be punished by imprisonment in the penitentiary for not less than five years nor more than fifteen years."

12–27–35, N.D.C.C. *"Negligent homicide—Definition.*—When the death of any person ensues within one year as a proximate result of injury received by the

driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

12–27–36, N.D.C.C. *"Negligent homicide—Penalty.*—Every person convicted of negligent homicide shall be punished by imprisonment in the penitentiary for not less than one year nor more than five years, or in the county jail for not more than one year, or by a fine of not more than one thousand dollars or by both such fine and imprisonment."

The main thrust of Mr. Hagge's argument is that § 12–27–35, N.D.C.C. (enacted in 1957) repeals by implication § 12–27–17(1), N.D.C.C. (enacted originally in 1877) to the extent that § 12–27–17(1) applies to charging a defendant with the crime of negligent homicide in the operation of a motor vehicle.

■ Although repeals by implication are not favored by this court, a later statute may operate to repeal an earlier one if the statutes are irreconcilable and inconsistent. Kessler v. Board of Education of City of Fessenden, 87 N.W.2d 743 (N.D.1958); State ex rel. State Farmers' Mut. Hail Ins. Co. v. Cooper, 18 N.D. 583, 120 N.W. 878 (1909). A statute may repeal prior inconsistent legislation, whether expressly declaring such repeal or not. Hagstrom v. Estherville School Dist. No. 43, 67 N.D. 56, 269 N.W. 93 (1936). See also: State v. Morf, 80 Ariz. 220, 295 P.2d 842 (1956); State v. London, 156 Me. 123, 162 A.2d 150 (1960). More recently, in First American Bank & Trust Co. v. Ellwein, 198 N.W.2d 84, 98 (N.D.1972), this court stated:

"There must be a clear repugnancy between the provisions of the new law and the old statute to such an extent that a necessary implication arises that the legislature by enactment of the latter Act intended to repeal the former, and then only to the extent of its repugnancy."

The primary issue before this court essentially involves a determination of whether or not the conflict between the two statutes constitutes a clear and irreconcilable inconsistency and an unavoidable repugnancy.

■ The fundamental test in all cases pertaining to repeal by implication is the intent of the legislature. The legislature, by enactment of the negligent homicide statute, intended to and did legislate anew in the field of homicide resulting from the improper operation of motor vehicles by redefining the penalty for such action. State v. Davidson, 78 Idaho 553, 309 P.2d 211 (1957).

■ The rule of repeal by implication is based upon the presumption that the legislature intends to maintain a consistent body of law in its entirety. State v. Biddle, 45 Del. 244, 71 A.2d 273 (1950). The rule necessitates a comparison of the statutes involved. In the instant case, there exist definite conflicts between the manslaughter statute and the negligent homicide statute as to the degree of proof required for conviction, the punishment imposed, and the discretion of the prosecuting attorney inherent in such conflicts between the statutes.

The difference in the degree of proof required by the applicable statutes, in our opinion, has created an inconsistency which cannot be reconciled on any reasonable basis. Pursuant to § 39–09–01, N.D.C.C., and § 12–27–17, N.D.C.C., a charge of manslaughter requires proof of only ordinary negligence. Thus, in North Dakota, the test to establish culpability for manslaughter due to criminal negligence in driving a motor vehicle is defined by § 39–09–01, N.D.C.C., to be a lower degree of negligence than the test subsequently established by the negligent homicide law.

The negligent homicide statute, § 12–27–35, N.D.C.C., requires proof of more than ordinary negligence. A reckless disregard of the safety of others or culpable negligence is the degree of proof required under this statute. 3 Wharton's Criminal Law and Procedure § 972, p. 138. In State v. Tjaden, 69 N.W.2d 272 (N.D.1955), in para-

graph 9 of the syllabus, this court defined the term "culpable negligence":

> " 'The term culpable negligence as used in Sec. 12–2719, NDRC 1943, defining manslaughter in the second degree as applied to the operation of a motor vehicle, implies a total lack of care which is properly described as being in a reckless and heedless manner with utter disregard for the lives and limbs of persons upon the highway.' . . ."

Under this definition, violation of § 39–09–01, N.D.C.C., unintentionally, or merely through a want of ordinary care, would not constitute culpable negligence. State v. Lowery, 223 N.C. 598, 27 S.E.2d 638 (1943). Thus, a person could be convicted of manslaughter in the first degree—a more serious crime—by a lesser quantum of proof than would be required to convict the same person, committing the same act, for the crime of negligent homicide.

There is a definite conflict between the punishment imposed under the manslaughter statute and that imposed under the negligent homicide statute. The manslaughter statute imposes a maximum sentence of fifteen years' imprisonment, while the negligent homicide statute imposes a maximum sentence of five years' imprisonment. The conflict between these statutes cannot be reconciled.

Where a later statute imposes a different punishment, either more or less severe, for the same or substantially the same offense, the later statute is ordinarily held to repeal the earlier one. State v. London, 156 Me. 123, 162 A.2d 150 (1960). Therefore, since the negligent homicide statutes are the latest legislative enactment, they must govern in the case at bar. State v. Davidson, 78 Idaho 553, 309 P.2d 211 (1957).

In 1A Sutherland Statutory Construction (C. Dallas Sands, 4th Ed. 1972), § 23.09, at pages 223–224, Professor Sands stated:

> "When a subsequent enactment covering a field of operation coterminous with a prior statute cannot by any reasonable construction be given effect while the prior law remains in operative existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict."

At the time that Mr. Hagge was arrested he could have been charged with either manslaughter or negligent homicide. We are not impressed with the State's argument that a state's attorney has prosecutorial discretion in deciding which of two possible charges to bring against Mr. Hagge in the instant case. We believe that such discretion is violative of Mr. Hagge's rights under the Fourteenth Amendment to the Federal Constitution, which requires equal protection of the law for all persons. In State v. Collins, 55 Wash.2d 469, 348 P.2d 214, 215 (1960), the Washington Supreme Court stated:

> "The principle of equality before the law is inconsistent with the existence of a power in a prosecuting attorney to elect, from person to person committing this offense, which degree of proof shall apply to his particular case."

We believe that the legislature intended to repeal the manslaughter statute to the extent that it is in conflict with the negligent homicide statute. The general manslaughter statute antedates the special negligent homicide statute, which is directed to one specific mode of committing a homicide; this invokes the rule of § 1–02–07, N.D.C.C., that when a general statute is irreconcilable with a subsequent special statute relating to the same subject matter, the provisions of the special statute shall prevail.

We hold that in all cases where the negligent homicide statute is applicable, it supersedes the manslaughter statute. The two statutes, § 12–27–17, N.D.C.C., and § 12–27–35, N.D.C.C., are so irreconcilably in conflict and repugnant that the purpose of the enactment of the two statutes cannot be harmonized.

In the event a new charge is brought, or attempted to be brought against Mr.

Hagge, this court deems it necessary to discuss the *Miranda* issues raised by Mr. Hagge.

It is Mr. Hagge's contention that the initial *Miranda* warnings given at the time he was taken into custody did not effectively apprise him of his constitutional rights. In State v. Iverson, 187 N.W.2d 1 (N.D. 1971), in paragraph 1 of the syllabus, this court held:

> "A person who is a suspect or upon whom an investigation is focused must be advised prior to any interrogation that he has the right to counsel and to have counsel with him during any interrogation; that he has the right to remain silent; that anything stated by him can be used in evidence against him; and that if he is an indigent, a lawyer will be appointed for him. These are the *Miranda* warnings. Unless these warnings are first given to such person, no statement or other evidence obtained as a result of the interrogation can be admitted in evidence against him."

A review of the record reveals that Mr. Hagge was not in the status of custodial interrogation while being questioned by Patrolman Willenbring at Burlington, and that, therefore, the *Miranda* warnings were not required since he was not placed in custody until the termination of the interview.

Mr. Hagge also contends that any statements that he made to the officers who were interrogating him at the courthouse—after he informed them that he desired to contact an attorney—should be suppressed. In Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated:

> "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present."

The United States Supreme Court, in *Miranda*, continued, at page 475, at page 1629 of 86 S.Ct.:

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. . . . Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders."

This is the applicable standard. The questioning of the defendant after he indicated that he wanted to consult with an attorney was contrary to the rule of the *Miranda* and *Iverson* cases. However, we hold it was error without prejudice since the defendant had given all his incriminating answers prior to asking for an attorney. The trial court so found at a suppression hearing and the voluntariness of the confession was likewise covered in the instructions to the jury, which set forth the *Miranda* rule. By its finding of guilt, the jury necessarily found that the incriminating statements were made prior to the request by Mr. Hagge to consult an attorney.

The other issues raised by Mr. Hagge are moot as a result of our holding.

The verdict of guilty is set aside and the case is remanded for a new trial on the charge of negligent homicide if that charge is brought.

ERICKSTAD, C. J., and KNUDSON, VOGEL and JOHNSON, JJ., concur.