**CITY OF GRAFTON, North Dakota, Plaintiff,**

v.

**FOUR G'S, INC., Defendant.**

**Civ. No. 9294.**

Supreme Court of North Dakota.

April 25, 1977.

DePuy, O'Connor & Goulet, Ltd., Grafton, for plaintiff; argued by W. R. Goulet, Jr., Grafton.

Robert A. Alphson, Grand Forks, for defendant.

ERICKSTAD, Chief Justice.

■ We are asked by the county court of increased jurisdiction of Walsh County to resolve the single question of law certified to this court under the provisions of Chapter 32-24, N.D.C.C.:

"1. Is Ordinance No. 339 of the City of Grafton preempted by the North Dakota Obscenity Control Statute (Chapter 12.1–27.1, North Dakota Century Code) thus prohibiting the City of Grafton from enforcing Ordinance No. 339?"

The defendant, Four G's, Inc., was convicted in the municipal court of the city of Grafton, North Dakota, of a violation of Ordinance No. 339 of the city of Grafton. The municipal court found that on March 22, 1976, the violation of the ordinance occurred as follows:

"That at the said time and place the said defendant did wilfully, wrongfully and unlawfully employ or use the services of a hostess or entertainer while such hostess or entertainer was unclothed or in such attire, costume or clothing as to expose to view a portion of the female breast below the top of the areola and a portion of the pubic hair, and the cleft of the buttocks . . ."

This language is from Ordinance No. 339, *supra*.[1]

The conviction was appealed to the Walsh county court of increased jurisdiction, which court asks us to determine whether this ordinance is invalid as having been preempted by the enactment in 1975 of

---

1. "AN ORDINANCE PROHIBITING CERTAIN ACTS OR CONDUCT TO TAKE PLACE IN OR UPON ANY PLACE LICENSED BY THE CITY OF GRAFTON, NORTH DAKOTA TO ENGAGE IN THE RETAIL SALE OF ALCOHOLIC BEVERAGES.

"BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GRAFTON, NORTH DAKOTA:

"3–0110. *Prohibited Conduct in Licensed Establishments.* No person who is licensed by the City of Grafton, North Dakota to sell alcoholic beverages at retail shall permit the following acts or conduct to take place on the licensed premises:

(a) To employ or use any person in the sale or service of alcoholic beverages in or upon the licensed premises while such person is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;

(b) To employ or use the services of any hostess or entertainer while such hostess or entertainer is unclothed or in such attire, costume or clothing as described in Paragraph (a) above;

(c) To encourage or permit any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person;

(d) To permit any employee or person to wear or use any device or covering exposed to view which simulates the breast, genitals, anus, pubic hair or any portion thereof;

(e) To permit any person to perform acts of or acts which simulate;
   1. With or upon another person sexual intercourse, sodomy, oral copulation, flagellation or any sexual acts which are prohibited by law;
   2. Masturbation or bestiality;
   3. With or upon another person the touching, caressing or fondling of the breast, buttocks, anus or genitals;

(f) To permit any person to use artificial devices or inanimate objects to depict any of the prohibited activities described above;

(g) To permit the showing of film, still pictures or other reproductions depicting;
   1. Acts or simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or other sexual acts which are prohibited by law;
   2. Any person being touched, caressed or fondled on the breast, buttocks, anus or genitals;
   3. Scenes wherein a person displays the vulva, anus or genitals;
   4. Scenes wherein artificial devices or inanimate objects are employed to depict, or drawings are employed to portray, any of the prohibited activities described above.

"3–0111. *Intent.* It is hereby declared to be the intent of this Ordinance that the person or party holding a license issued by the City of Grafton, North Dakota to sell alcoholic beverages at retail shall be responsible for the regulation and supervision of all acts or conduct which take place on the licensed premises, and for the purpose of construing this Ordinance the acts of any employee of the licensee shall be considered the act of the licensee.

"3–0112. *Penalty For Violation.* Any person, firm or corporation violating any of the provisions of this Ordinance, shall upon conviction be punished by a fine not to exceed Five Hundred ($500.00) Dollars or imprisonment not to exceed thirty (30) days or both such fine and imprisonment in the discretion of the Court; the Court to have power to suspend such sentence and revoke the suspension thereof.

"3–0113. *Effective Date.* This Ordinance shall be in force and effect from and after its passage, approval and publication."

Chapter 12.1–27.1, N.D.C.C. A section of that chapter provides:

"This chapter shall be applicable and uniform throughout the state, and no political subdivision shall enact new, or enforce existing, ordinances, or resolutions regulating or prohibiting the dissemination of obscene materials, *or controlling obscene performances.*" (Emphasis by the Court.) § 12.1–27.1–12, N.D.C.C.

Chapter 5–02, N.D.C.C., dealing with the retail licensing of the sale of alcoholic beverages, specifically involves the local governing body in the licensing process, providing for both state and local licenses. Section 5–02–01, N.D.C.C. In conjunction with such licensing power, the local governing body is explicitly empowered to regulate the operation of its licensees:

"The local governing body by ordinance or resolution may regulate or restrict the operation of licensees including among other things determining the number of licenses to be granted, establishing health and safety standards for licensed premises, setting of hours *and prohibition of dancing or various forms of entertainment on the premises.*" (Emphasis by the Court.) § 5–02–09, N.D.C.C.

The Supreme Court of Nebraska in *Midtown Palace, Inc. v. City of Omaha,* 193 Neb. 785, 229 N.W.2d 56 (1975), held that an Omaha ordinance substantially similar to Ordinance No. 339 of the city of Grafton was not rendered void by the enactment of the State statute preempting the area of obscenity with specific reference to live performances. That court decided that the city ordinance in question there did not declare nudity to be obscene, but attempted to control nudity as a technique in selling liquor, finding the latter to be legitimate object. *Id.* at 229 N.W.2d 59.

Unlike the Nebraska statutory scheme relating to obscenity, the North Dakota Century Code chapter on obscenity control specifically relates to liquor establishments licensed by the local governing body:

"3. A person is guilty of a class A misdemeanor if he, as owner or manager of an establishment licensed under section 5–02–01, permits an obscene performance in his establishment. A person is guilty of a class A misdemeanor if he participates, whether or not for compensation, in an obscene performance in an establishment licensed under section 5–02–01." § 12.1–27.1–01(3), N.D.C.C.

Section 5–02–09, N.D.C.C., a *special* statute delegating the power to regulate or restrict the operation of liquor licensees would prevail over Section 12.1–27.1–12, N.D.C.C., which is a *general* preemption statute, if only these two statutes were involved. Section 1–02–07, N.D.C.C. However, Section 12.1–27.1–12 must be read in conjunction with Section 12.1–27.1–01(3), quoted above.

■ Section 12.1–27.1–01(3) was enacted in 1975, eight years after the enactment of Section 5–02–09. In order to give full force to the later enacted provision, it appears that there must be an appropriation by the State of some regulatory power previously delegated to the local governing body through the earlier statute. This court is ill disposed to finding repeals by implication of one statute by another. *E.g., Rodgers v. Freborg,* 240 N.W.2d 63 (N.D.1976); *Tharaldson v. Unsatisfied Judgment Fund,* 225 N.W.2d 39 (N.D.1974). *See* 1A C. Sands, Sutherland Statutory Construction § 23.10 (4th ed. 1972).

"There must be a clear repugnancy between the provisions of the new law and the old statute to such an extent that a necessary implication arises that the legislature by enactment of the latter Act intended to repeal the former, and then only to the extent of its repugnancy." *First American Bank & Trust Company v. Ellwein,* 198 N.W.2d 84, 98 (1972).

*Accord, State v. Hagge,* 224 N.W.2d 560 (N.D.1974).

The fundamental test, however, in determining whether a statute has been repealed by implication through a later enactment, is the intent of the legislature. *State v. Hagge, supra,* at 564. In order to properly

develop the legislative history of Chapter 12.1–27.1, N.D.C.C., we must go back to its genesis, a 1973–1975 interim study by the Committee on Judiciary "A" of the North Dakota Legislative Council.

The previous North Dakota obscenity control statutes were held unconstitutional by the Federal District Court in *McCright v. Olson,* 367 F.Supp. 937 (D.N.D.1973). This may have precipitated the legislation under consideration today.

Several alternative drafts of obscenity legislation were before the committee. After a review of the alternatives, it was suggested that, since live pornographic entertainment presented different problems than other types of pornography, different methodologies should be used to handle each situation, particularly with reference to live performances. *Minutes of the Committee on Judiciary "A",* North Dakota Legislative Council, September 5–6, 1974, at 5. It was also suggested that the committee staff draft a separate bill dealing with performances in liquor establishments and reference was made to a California statute which rested on the fact that the State licensed liquor establishments. *Id.* at 7. The staff prepared a composite draft at the direction of the committee which included the following provision:

"3. A person is guilty of a class A misdemeanor if he, as owner or manager of an establishment licensed under section 5–02–01, permits an obscene performance in his establishment. A person is guilty of a class A misdemeanor if he participates, whether or not for compensation, in an obscene performance in an establishment licensed under section 5–02–01." Appendix "C", *Minutes of the Committee on Judiciary "A",* North Dakota Legislative Council, September 30–October 1, 1974 at 1.

This comment followed the above provision as set forth in Appendix "C":

"*STAFF COMMENT*: This subsection is in accordance with Chief Anderson's suggestions at the last meeting, and is an attempt to take advantage of the United States Supreme Court's decision in *California v. LaRue,* 409 U.S. 109 [93 S.Ct. 390, 34 L.Ed.2d 342] (1972), wherein the Court upheld California Department of Alcoholic Beverage Control regulations prohibiting explicitly sexual live entertainment or films in bars, basing its decision on the States' power to control the manner in which liquor is dispensed under the Twenty-first Amendment." *Id.* at 2.

The section relating to obscene performances in licensed liquor establishments as set forth in the above draft is identical to Section 12.1–27.1–01(3), N.D.C.C., *supra.*

In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), the United States Supreme Court case mentioned in the staff comment quoted above, it was held that certain rules adopted by the California Department of Alcoholic Beverage Control were not limited by the Supreme Court's decisions as to obscenity, and were not violative of the First and Fourteenth Amendments to the United States Constitution. The Court held that the State regulatory authority was not limited by the constitutional guidelines in obscenity cases, as the States have authority somewhat broader than police power alone in regulating intoxicating liquors under the Twenty-first Amendment. While *LaRue* conceivably gives the State of North Dakota wider latitude than it chose to exercise under Section 12.1–27.1–01(3), as the legislature chose to apply the obscenity standard to performances in liquor establishments licensed under Section 5–02–01, N.D.C.C., the breadth of *LaRue* under different statutory provisions is not before us and thus cannot be decided in this case.

When we consider Section 12.1–27.1–12, N.D.C.C., which prohibits political subdivisions from enacting or enforcing existing ordinances regulating or prohibiting the dissemination of obscene material or controlling obscene performances in light of Section 12.1–27.1–01(3) which declares that a person is guilty of a class A misdemeanor if he, as owner or manager of an establishment licensed under Section 5–02–01, N.D.

C.C. (relating to the sale of alcoholic beverages at retail), permits an obscene performance in his establishment, we must conclude that the legislature intended to prohibit municipalities from attempting to control obscenity not only generally, but also specifically in establishments licensed under Chapter 5–02, N.D.C.C. It is significant also that much of the rest of Section 12.1–27.1–01, N.D.C.C., relates to the same conduct prohibited by the ordinance here under attack.[2]

Our decision today should not delay the prosecution of obscene performances by the State, as Section 12.1–27.1–05, which requires a civil determination prior to a criminal prosecution, does not relate to obscene performances but relates to the dissemination or production of material.[3]

For the reasons stated herein, we conclude that the answer to the certified question is yes, and that Ordinance No. 339 is preempted by the North Dakota Obscenity Control statute, Chapter 12.1–27.1, N.D.C.C.

SAND, PAULSON and VOGEL, JJ., concur.

PEDERSON, Justice (dissenting).

I do not understand how we can reach the conclusion that the City of Grafton cannot control conduct in a licensed liquor establishment in Grafton because of the State obscenity control statute (Chapter 12.1–27.1, NDCC).

After stating that this Court is ill-disposed to finding repeals by implication, and

**2.** "1. A person is guilty of a class A misdemeanor if, knowing of its character, he disseminates obscene material, or if he produces, transports, or sends obscene material with intent that it be disseminated.

"2. A person is guilty of a class A misdemeanor if he presents or directs an obscene performance for pecuniary gain, or participates in any portion of a performance which contributes to the obscenity of the performance as a whole.

. . . . .

"4. As used in this chapter, the terms 'obscene material' and 'obscene performance' mean material or a performance which:
a. Taken as a whole, the average person, applying contemporary North Dakota standards, would find predominantly appeals to a prurient interest;
b. Depicts or describes in a patently offensive manner sexual conduct as described in subsection 8 of this section; and
c. Taken as a whole, lacks serious literary, artistic, political, or scientific value.
That material or a performance is obscene shall be judged with reference to ordinary adults, unless it appears from the character of the material or the circumstances of its dissemination to be designed for minors or other specially susceptible audience, in which case, the material or performance shall be judged with reference to that type of audience.

"5. As used in this chapter, the term 'disseminate' means to sell, lease, advertise, broadcast, exhibit, or distribute for pecuniary gain.

"6. As used in this chapter, the term 'material' means any physical object, including, but not limited to, any type of book, sound recording, film, or picture used as a means of present-

ing or communicating information, knowledge, sensation, image, or emotion to or through a human being's receptive senses.

"7. As used in this chapter, the term 'performance' means any play, dance, or other exhibition presented before an audience.

"8. As used in this chapter, the term 'sexual conduct' means actual or simulated:
a. Sexual intercourse,
b. Sodomy,
c. Sexual bestiality,
d. Masturbation,
e. Sadomasochistic abuse,
f. Excretion,
or a lewd exhibition of the male or female genitals. As used in this subsection, the term 'sodomy' means contact between the penis and the anus, the mouth and the penis, the mouth and the vulva, or the mouth and the anus. As used in the subsection, the term 'sadomasochistic abuse' means a depiction or description of flagellation or torture by or upon a person who is nude or clad in undergarments, or in a bizarre or revealing costume; or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed.

"9. As used in this chapter, the term 'book' means any book, magazine, pamphlet, newspaper, or other article made out of paper and containing printed, typewritten, or handwritten words." Section 12.1–27.1–01, N.D.C.C.

**3.** "A criminal prosecution for violation of section 12.1–27.1–01 or section 12.1–27.1–03 relating to the dissemination or promotion of material may be commenced only against a person who subsequently disseminates material previously adjudged obscene in a civil proceeding in accordance with sections 12.1–27.1–06 through 12.1–27.1–08." Section 12.1–27.1–05, N.D.C.C.

that the Legislature has explicitly empowered local governing bodies to regulate the operation of dealers in alcoholic beverages, including authorizing the prohibition of "various forms of entertainment on the premises" (§§ 5–02–09 and 40–05–01(29), NDCC), the Court, in effect, proceeds to find that §§ 5–02–09 and 40–05–01(29) are repealed by implication because of § 12.1–27.1–01(3), NDCC.

These statutes are not in conflict, and therefore there is no reason to apply § 1–02–07, NDCC. There is nothing unusual about city ordinances prohibiting the same activity as is prohibited by State law. The Nebraska holding in *Midtown Palace, Inc. v. City of Omaha,* 193 Neb. 785, 229 N.W.2d 56 (1975), should not be discounted on the basis that our statutes have this peculiar difference.

This Court said in *Thielen v. Kostelecky,* 69 N.D. 410, 287 N.W. 513 (1939), that "the retail liquor traffic has generally been deemed one *peculiarly subject not only to state but to local regulation.*" [Emphasis added.] There is a legitimate reason for the obscenity control statute distinguishing between the control to be exercised over the liquor dispensing industry and other activities. The majority opinion practically wipes out the distinction.

The question should be answered in the negative and the case should be remanded with directions to the Walsh County Court With Increased Jurisdiction to affirm the municipal court conviction.