[File No. 6599.]

J. A. THIELEN, Respondent, v. WILLIAM KOSTELECKY, Fred Gerlich, P. J. Baseflug, Mike Drury and George A. Senour, as Members of the City Commission of the City of Dickinson, Stark County, North Dakota, Appellants.

(287 N. W. 513, 124 A.L.R. 820.)

Opinion filed August 29, 1939.

*J. W. Sturgeon,* for appellants.

*Murtha & Murtha,* for respondent.

*C. L. Foster,* on oral argument, for appellants.

CHRISTIANSON, J. The plaintiff instituted this mandamus proceeding in the district court of Stark county to compel the city commission of the city of Dickinson to issue to him a license to engage in business in the city of Dickinson as a retailer of alcohol and alcoholic beverages (as defined by chap. 259, Laws 1937). After hearing, the trial court ordered that a peremptory writ of mandamus issue, directed to the defendants and ordering them to forthwith issue a license to the plaintiff. The defendants have appealed to this court from the decision of the district court.

The facts necessary to an understanding of the issues presented on this appeal are substantially as follows:

The Liquor Control Act of this state (Laws 1937, chap. 259) defines alcohol and alcoholic beverages to "mean and include any alcoholic, spirituous, vinous, fermented, malted, or other liquor which contains more than four per centum (4%) of alcohol by weight." Id. § 2. It provides that: "Any person having a legal and bona fide residence in, and being a citizen of the state of North Dakota, may engage in the wholesale or retail sale of alcohol and alcoholic beverages in the manner and pursuant to the regulations and restrictions contained in this Act. Provided, that no person shall hold a wholesale and a retail license at the same time." Id. § 4.

"Any person engaging in the retail sale of alcohol and alcoholic beverages as herein defined must first procure from the governing body of the city or village, wherein the said business is to be conducted, a license, the fee therefor to be not less than Two Hundred ($200.00) Dollars, or more than One Thousand ($1,000.00) Dollars, to be determined by the governing body of such city or village; and any person desiring to engage in the retail sale of alcohol and alcoholic beverages at a place other than in the incorporated limits of a city or village must first procure a license from the County Commissioners at (of) the County in which such business is to be conducted, which license fee shall not be less than Two Hundred ($200.00) or more than One Thousand ($1,000.00) Dollars, to be determined by the said Board of County Commissioners; provided that the fee for such license shall be the same to each individual within each of the said political subdivisions respectively; provided further that such license shall not be transferable, except to the executors or administrators of a deceased license holder.

"It is further provided that such retail license shall not permit the sale at any one time to any person of an amount greater than five wine gallons." Id. § 5.

The Act prescribes a tax on alcohol and alcoholic beverages, establishes the mode of collection of such tax and provides for the distribution of the proceeds of such tax. Id. §§ 7–9. It also prescribes a penalty for the violation of the provisions of the Act. Id. § 14.

Section 12 of the Act provides: "There is hereby conferred upon

the governing bodies of cities and villages, and . . . the Board of County Commissioners, within their respective jurisdictions, the authority to revoke licenses for cause, and to regulate the retail sale of alcohol and alcoholic beverages, subject to review by the Courts of this State."

After the Liquor Control Act had become effective, the city commission of the city of Dickinson adopted an ordinance which, in part, provided as follows:

"Section 675. (4) Licenses provided for herein shall be denied to any applicant who has not fully complied with the provisions of this Chapter or, in the discretion of the Board of City Commissioners, to any person of questionable moral character, or for any other cause which would, in the opinion of said Board, render applicant or the premises to be licensed improper or unfit, or which would in said Board's opinion, make the granting of such license contrary to the best interests of the City of Dickinson and its citizens."

"Section 724. Limitation of Licenses. The Board of City Commissioners, having made a study of and investigated the number of commercial licenses heretofore issued for the sale of beer and intoxicating liquor, and having duly considered the question of the enforcement of chapters 27 and 28 and the laws of the State relative to the sale of beer and intoxicating liquor, in its judgment and discretion determines that there shall not be granted more than ten (10) licenses for the sale of beer and intoxicating liquor. Licenses issued for the sale of beer only or intoxicating liquor only shall be considered in arriving at the number of licenses to be issued and in no event shall the same, or combination thereof, exceed ten (10) licenses."

"Section 725. Number of Licenses, How Determined. Licenses may be granted to any of the persons, firms or corporations holding a license to engage in the business defined herein at the time this chapter takes effect, but when, and if, any license in existence at said time is cancelled or revoked for any of the reasons set out in chapters 27 or 28 or other ordinances of the city or laws of the State, no new license shall be issued to such person, firm or corporation or for such premises to any person, firm or corporation, until the number of valid existing licenses does not exceed nine (9), and then and in that event, a further license may be granted, and no further or other licenses shall be granted

pursuant to the provisions of chapter 27 or 28 until there has been a further reduction in the number of existing licenses, as provided for in this chapter."

The plaintiff, Thielen, applied to the city commission of Dickinson for a retail liquor dealer's license. The premises described in the application, where the retail liquor business was to be conducted, consists of a portion of a building fronting upon an alley and the only entrance to the proposed place of business is a door opening upon the alley. There are no other doors in the proposed place of business at all. The alley is eighteen feet wide. On the north side of the alley, across from the door of the proposed place of business, there is located a telephone or electric power transmission pole, and on the south side of the alley, and in front of the premises where the proposed retail liquor business is proposed to be carried on, there is another telephone or electric power transmission pole. Photographs were submitted in evidence showing the alley and the building in which the business is proposed to be carried on.

The board of city commissioners denied the application for a license, on two grounds: (1) That there already had been issued and then were in effect in the city of Dickinson ten retail liquor licenses, and that the granting of a license to the applicant would be violative of the ordinances of the city of Dickinson and detrimental to the best interests of the city; and (2) that in the judgment of the city commission "the premises for which the application for liquor license by the said J. A. Thielen was filed, is not a fit and proper place for the sale of intoxicating liquors because the building in which the sale is to be made, if a license is granted, faces an alley and the only opening into and out of said building is into an alley and the doorway of the said building is flush with the alley running East and West along the north side of said building and that the granting of a license in said building, because of the excessive automobile traffic through said alley would be dangerous and detrimental to the safety and welfare of the citizens of said city of Dickinson."

The trial court held that the city commission had no authority to limit the number of retail liquor licenses, and that it had no authority to reject the application for a retail liquor license because the proposed place of business for which a license was sought was situated upon, and

had an entrance only from, an alley. In a memorandum opinion filed by the trial court, the view is expressed that where an application for a retail liquor license, in due form and accompanied by the required license fee, is presented by a "person having a legal and bona fide residence in, and being a citizen of the state of North Dakota" a city commission has no authority to refuse to issue a license.

The decision of the trial court must be reversed. The liquor traffic is one properly subject to governmental control, and the retail liquor traffic has generally been deemed one peculiarly subject not only to state but to local regulation. Chapter 259, Laws 1937, recognizes this basic theory and confers upon the governing bodies of cities, within their respective jurisdictions, the authority "to regulate the retail sale of alcohol and alcoholic beverages." The meaning of a word in a given sentence or clause may be affected not only by the context, but also by the subject to which it is applied. As a general rule the word "regulate" in statutes conferring power upon a legislative or administrative body to deal with a given subject, has a broad meaning. "Regulate" is the word used in the Federal Constitution to define the power of Congress over foreign and interstate commerce. U. S. Const. art. 1, § 8; St. Louis v. Western U. Teleg. Co. 149 U. S. 465, 469, 37 L. ed. 810, 813, 13 S. Ct. 990. The Liquor Control Act confers upon the governing body of a city authority to issue licenses for retail liquor stores, and it authorizes such governing body to fix the amount of the license fee at any figure from $200 to $1,000. Id. § 5. It also confers upon such governing body the authority to revoke licenses for cause and "to regulate the retail sale of alcohol and alcoholic beverages." Id. § 12. If the legislature had intended that a license should issue as a matter of course to any resident and citizen of the state who presented an application in due form and tendered payment of the prescribed license fee, and that the governing body of the city should not be required to exercise any judgment as to the fitness of the applicant or the fitness of the premises, then there would have been no need to provide that the application for a license should be submitted to the governing body and passed upon by it. If a license were to be issued as a matter of course to each and every applicant who is a citizen and resident of the state and who pays the requisite license fee, then it

would seem that the duty to issue such licenses would have been placed upon some ministerial officer, and not upon the governing body.

The Liquor Control Act does not evidence an intention that the governing body of a city shall serve merely as a rubber stamp for the approval of applications for licenses. It evidences an intention to charge such governing body with duties which require the exercise of judgment and discretion. The governing body is given authority to determine the amount of the license fee, within the limitations fixed by the statute. Such body may provide that the license fee shall be $200, that it shall be $1,000, or that it shall be any sum between those two limits. It confers upon such governing body authority to revoke, for cause, a license that has been issued. This necessarily implies that the governing body has power to inquire into the conduct of the business and ascertain whether there is or is not cause for revocation. The statute specifically provides that the governing body shall have power "to regulate the retail sale of alcohol and alcoholic beverages." The power to regulate a particular business includes the authority to prescribe reasonable rules and regulations and conditions upon which such business may be conducted or permitted. 53 C. J. p. 1175; Ogden City v. Leo, 54 Utah, 556, 182 P. 530, 5 A.L.R. 960. See also State v. Barge, 82 Minn. 256, 84 N. W. 911, 53 L.R.A. 428; Tacoma v. Keisel, 68 Wash. 685, 124 P. 137, 40 L.R.A.(N.S.) 757.

"When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority to make all such ordinances as may be necessary to make the grant of power effectual, and to preserve the public peace, good order and security against dangers arising from the traffic in such liquors. It is only required that such ordinances should be within the scope of the powers granted, and not unreasonable, unjust, or unduly oppressive, or unfairly discriminating." 33 C. J. pp. 522–524.

The power "to regulate the retail sale of alcohol and alcoholic beverages" conferred upon the governing board of a city includes the power to prescribe such reasonable rules and impose such reasonable restrictions as to the manner and circumstances in which the business shall be conducted as will tend to promote order and protect the public from harm. State v. Barge, 82 Minn. 256, 84 N. W. 911, 53 L.R.A.

428; Tacoma v. Keisel, 68 Wash. 685, 124 P. 137, 40 L.R.A.(N.S.) 757, and Ogden City v. Leo, 54 Utah, 556, 182 P. 530, 5 A.L.R. 960; supra. The power "to regulate the retail sale of alcohol and alcoholic beverages" vests the governing board of a city with authority to prescribe reasonable rules concerning the premises where the business is to be carried on (State v. Barge, supra), and to refuse to issue a license where the proposed place of business is unfit according to the prescribed standards; and it also vests such board with authority to place a reasonable limit upon the number of retail liquor stores to be operated in the city. Re Jugenheimer (Brown v. Jugenheimer) 81 Neb. 836, 116 N. W. 966, 18 L.R.A.(N.S.) 386; State ex rel. Howie v. Northfield, 94 Minn. 81, 101 N. W. 1063; State ex rel. McIntire v. Libby, 107 Mont. 216, 82 P. (2d) 587; Curry v. Aurora, 175 Ill. App. 57; People ex rel. Fitzgerald v. Harrison, 256 Ill. 102, 99 N. E. 903, Ann. Cas. 1913E, 362. Note in Ann. Cas. 1913E, pp. 365 et seq.

The city of Dickinson, according to the 1930 Federal census, has a population of 5,025. Certainly it cannot be said that it is unreasonable to limit the number of retail liquor stores in that city to one for each five hundred inhabitants. Neither can it be said that it was unreasonable for the city commission to find as a fact that the proposed place of business of the applicant was not a fit place for a retail liquor store.

The decision appealed from is reversed, and the proceeding is ordered dismissed.

NUESSLE, Ch. J., and BURR, MORRIS, and BURKE, JJ., concur.