**MINI MART, INC., Petitioner and Appellee,**

**v.**

**The CITY OF MINOT, a municipal corporation, and David Badgley, Carl Collins, David Germain, James Hatelid, James Holdman, Ronald Klecker, Dolores Kramer, Edward Kuhn, Neil Leigh, John Pence, and Curtis Zimbelman, individually and as aldermen of the City of Minot, North Dakota, Respondents and Appellants.**

**Civ. No. 10515.**

Supreme Court of North Dakota.

March 21, 1984.

Bosard, McCutcheon & Rau, Minot, for petitioner and appellee; argued by Robert S. Rau, Minot. Appearance by Lyle G. Witham, Minot.

Eaton, Van de Streek & Ward, Minot, for respondents and appellants; argued by Nevin Van de Streek, Minot.

ERICKSTAD, Chief Justice.

The City of Minot and eleven of its aldermen (hereinafter collectively referred to as the "City") have appealed from a judgment entered by the District Court of Ward County granting a peremptory writ of mandamus commanding the City to issue a retail beer license to Mini Mart, Inc. We affirm.

On March 7, 1983, Mini Mart applied to the City for a retail beer license for one of its premises where it operates a combination gasoline station and convenience store. Mini Mart filed a completed application for the license which contained all of the information required by the City and its code of ordinances. Two retail beer licenses were available for issuance at that time and Mini Mart was one of two applicants for the licenses. One of the two remaining licenses was subsequently issued to the other applicant. On April 4, 1983, both the City's Liquor/Gambling Control Committee and the City Council voted to deny Mini Mart's application for the remaining license. Mini Mart was the only applicant for that license.

As a result of the denial of the license, Mini Mart petitioned for a writ of mandamus. Mini Mart argued that it had performed all of the acts required of it and that the plan it submitted to the City Council met all the standards and criteria imposed by the City in its code of ordinances in regard to the issuance of a retail beer license. The City admitted that Mini Mart's application complied with all of the sanitation, safety, and health requirements imposed by the City's ordinances, but argued that it had the authority to withhold approval of Mini Mart's application on the basis of unwritten criteria. The City thus urged the trial court to take judicial notice of the demography of the area, the geography, and the public mood respecting driving while under the influence of alcoholic beverages in determining whether or not the City Council abused its discretion in denying Mini Mart's license application.

In a memorandum opinion dated July 27, 1983, the trial court concluded that, although the City Council had statutory discretion in the issuance of liquor licenses, the reservation of discretion must be expressed in an existing ordinance. The court found § 5–28(e) of the Minot Code of Ordinances [1] to be the only ordinance which

1. Section 5–28(e) of the Minot Code of Ordinances provides:

allowed the City Council to exercise discretion. The court also concluded that it was "an abuse of discretion not to make a record so the court can determine any arbitrariness or abuse of discretion on the part of the licensing agency." The court thus remanded the matter to the City Council "to determine at its next general council meeting only whether the *structure* proposed to be used for the retail sale of beer by the petitioner is *sufficient* for the general welfare and safety of the general public" in accordance with the terms of § 5–28(e). [Emphasis in original.] The court also ordered that the City's findings on that issue be "set out in full and spread upon the records of the city council" so that the court could determine whether or not the action was arbitrary, capricious, or discriminatory.

Extensive minutes were taken at the City Council's meeting on August 1, 1983. Mini Mart's counsel appeared and offered a copy of Mini Mart's original application for the license, which contained the approval signature of the City Building Inspector, and an affidavit of an officer of the construction company engaged by Mini Mart to construct an addition to the premises, stating that the company would construct the facility so that it is "in strict compliance and conformity" with the Minot Code of Ordinances and "is sufficient for the general welfare and safety of the general public."

Two of the City Council members read prepared statements which were concurred in by nine other members of the Council. The prepared statements expressed concerns that the building plans offered by Mini Mart would encourage the use of one employee to oversee the off-sale operation, the grocery sales, and gas sales, and consequently, "supervision of the off-sale portion of the business will be reduced with a realistic assumption that purchases of beer by minors will be made somewhat easier than otherwise would be the case." One of the statements also expressed the view that if the license were granted, Mini Mart would be in violation of § 5–4 of the Minot Code of Ordinances, which makes it an offense to sell items other than those listed in the ordinance in a licensed premises. It was further stated that it would not be "reasonable or prudent to grant a license to an establishment that is frequented and to a large extent has become a hangout for minors." Concerns were also expressed that "it is not wise public policy to have an off-sale beer establishment in close proximity to the campus of Dakota Northwestern University"[2] and that "[a]pproving the license for a business to sell both alcohol and gasoline sends the wrong signal to the public." Mini Mart's application was denied on a 10–2 vote.

At the same meeting, the City Council passed a resolution and passed an ordinance on first reading. Both provisions are substantively identical and purport to forbid the granting of a retail liquor license for any premises upon which is located a gasoline station, and also provide additional criteria by which the City Council may judge the suitability of a liquor license applicant.[3]

---

"Sec. 5–28. *Inspection of premises.*

 * * * * * *

(e) Upon the receipt by the city council of the report, or reports, the city council shall determine whether or not in its opinion the building proposed to be used is suitable and proper for use as an alcoholic beverage licensed place of business. In the event that the city council shall feel that the structure is not sufficient for the general welfare and safety of the general public, then such application shall be denied. Upon such denial, the city auditor shall notify the applicant of such denial."

2. In regard to Mini Mart's proximity to the University, it was also noted in one of the statements that "[t]his situation has existed in the past but the city council does not believe that this situation should continue and has voted not to issue the license to Mini Mart."

3. The resolution states:

RESOLUTION NO. 77

"In addition to those criteria set forth in Chapter 5 of the City of Minot Code of Ordinances pertaining to the issuance of a retail alcoholic beverage license, the following criteria and procedures shall be applicable to the application process.

"No retail license required by this Article shall be granted for any premises—

On August 4, 1983, the City moved for leave to amend its pleadings in response to the petition for writ of mandamus to raise an additional defense that Resolution No. 77 explicitly barred the granting of a license to an enterprise such as Mini Mart.

In a memorandum opinion dated August 10, 1983, the district court ruled that Resolution No. 77 was "ineffective for filling the role of being a surrogate law until the ordinance can take over" and declared it a "nullity" in the instant case. The court also stated that it had read the statements of the Council members and found them to be irrelevant to the disposition of the matter, and from the absence in the record of any noted deficiencies of the structure for the welfare and safety of the general public, Mini Mart was entitled to have the beer license issued to them because it had satisfied all of the conditions precedent to being issued a retail beer license under the Minot Code of Ordinances. The City has appealed from the judgment granting the writ of mandamus.

The major issues raised by the City in this case are as follows: (1) whether or not the "record" of the City's hearing on Mini Mart's license application was sufficient for judicial review; (2) whether or not the trial court erred in holding that Resolution No. 77 was a nullity in this case; (3) whether or not the trial court erred in holding that the City Council could not rely upon unwritten ad hoc criteria to deny a liquor license; and (4) whether or not the trial court gave too narrow a construction to the general welfare and safety clause contained in § 5–28(e) of the Minot Code of Ordinances.

Before reaching these questions, we briefly outline the function of this Court when reviewing appeals in mandamus actions.

■■■ This Court will not reverse a trial court's issuance or denial of a writ of mandamus unless, as a matter of law, such writ should not issue or unless there is a finding that the trial court has abused its discretion. *Eckre v. Public Service Commis-*

"(1) Upon which is located a gasoline filling station or service station; or

"(2) Which premises are owned commonly with and which abut premises upon which is located a gasoline filling station or service station.

"No retail license required by this Article shall be granted for any premises which abut other premises, which other premises are used primarily for the sale of personal property, if the majority of the personal property sold at such other premises is not consumed by the purchaser on the premises where sold, unless the licensed premises are entirely separated from such other premises by a solid wall with no openings therein, except for those openings necessary for utility service.

"Upon the receipt by the City Council of those reports which by way of ordinance or resolution are required to be submitted to it as part of the application process for a retail alcoholic beverage license the City Council shall determine whether the license shall issue or not. In so doing it shall consider the reports and it may consider (i) statements made before it at the Council meeting wherein the matter is taken up, (ii) any other information publicly presented to it at the meeting by the City staff, or by aldermen, or by any other person, and (iii) such other matters of which a court could take judicial notice. The applicant shall have the right to make an argument or plea to the Council, or both, and

he shall have the additional right to comment upon the matters presented to the Council and those matters which the Council indicates it will take notice of. In reaching its decision as to whether the license should issue the Council reserves the right to consider whether the design, physical condition, and location of the proposed premises, and the proposed method of operation by the licensee, are consistent with the health, safety, general welfare, morals, comfort, good order, and peace and quiet of the general public or of those persons who work, live, transact business or participate in recreation in the vicinity of the premises sought to be licensed.

"Passed and adopted this 1st day of August, 1983."

Ordinance No. 2604, which was passed on first reading at the August 1 meeting is substantively identical to Resolution No. 77, but is couched in terms of an amendment to §§ 5–21 and 5–28(e) of the Minot Code of Ordinances. Section 5–21 is entitled "Premises ineligible for license" and basically provides that no retail liquor license shall be granted for any premises within 200 feet of a building "occupied exclusively as a school, church, synagogue, or other place of worship." The section does not apply when the retailer is a club or lodge having a membership of 200 or more and was in existence on or before November 3, 1936.

There has been no claim that Mini Mart is located within 200 feet of the University.

*sion,* 247 N.W.2d 656, 665–666 (N.D.1976). *See also Blomquist v. Clague,* 290 N.W.2d 235, 237 (N.D.1980); *Fargo Ed. Ass'n v. Paulsen,* 239 N.W.2d 842, 849 (N.D.1976). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *E.g., Fleck v. Fleck,* 337 N.W.2d 786, 789 (N.D.1983). In *Midland Produce Co. v. City of Minot,* 70 N.D. 256, 257–258, 294 N.W. 192, 193 (1940), this Court stated:

> "Mandamus will not lie against a municipal board or officer unless the plaintiff's or relator's legal right to the performance of the particular act sought to be compelled by the writ is clear and complete.... Neither will it lie where there is some other plain, speedy and adequate remedy in the ordinary course of law.... To be enforceable by mandamus, the duty must be one clearly and peremptorily enjoined by law. The law must not only authorize the act, but it must require it to be done...." [Citations omitted.]

*See also Eckre, supra,* 247 N.W.2d at 666; *Fargo Ed. Ass'n, supra,* 239 N.W.2d at 844.

With these principles in mind, we proceed to address the issues raised by the parties.

## I

## ADEQUACY OF THE RECORD

In its first memorandum opinion, the district court concluded that the City abused its discretion when it did not make an adequate record of its proceedings. Mini Mart argues that any administrative or quasi-judicial hearing before the City Council is a "hearing" for which an adequate record must be kept for judicial review, citing decisions rendered under the provisions of Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act. If Mini Mart's argument is that the "record" of the proceedings before the City Council in this case must have consisted of sworn testimony from witnesses and a written transcript of the testimony, we do not agree.

■ Initially, we note that a municipal government, not being an "administrative unit of the executive branch of state government," § 28–32–01(1), N.D.C.C., is not an "administrative agency" for the purposes of Chapter 28–32. Although § 5–02–10, N.D.C.C., provides that a record of hearings on alleged violations of liquor provisions be made "by stenographic notes or the use of an electronic recording device," and although § 5–02–11, N.D.C.C., provides that appeals from the decisions of local governing bodies suspending or revoking liquor licenses are governed by Chapter 28–32 [*see Matter of Retail Liquor License No. 15,* 283 N.W.2d 170 (N.D.1979) ], no such requirements exist in proceedings regarding a municipality's initial decision to grant or deny a liquor license application by a first-time applicant.

■ Although the enactment of a municipal ordinance is a legislative function, interpretations thereof by the municipal governing body are quasi-judicial acts. *Munch v. City of Mott,* 311 N.W.2d 17, 22 (N.D. 1981). In regard to judicial review of a municipal governing body's quasi-judicial or administrative acts, this Court stated in *Munch, supra:*

> "Even though there be no record available of the proceedings before the city council, the decisions of the council are subject to judicial review. A trial anew is necessary. *Shaw v. Burleigh County,* 286 N.W.2d 792 (N.D.1979). This does not mean that the court may substitute its judgment for that of the council. We said in *Shaw, supra,* 286 N.W.2d at 796, 'that evidence [from a trial anew] must be viewed in light of the findings, if any, the decision, and the reasons given therefor ...' by the commission."

■ We held in *Munch, supra,* 311 N.W.2d at 18, that a court's limited review of an administrative decision by a city council does not prevent the court from hearing evidence "anew" where there are inadequate records upon which to base a judicial review, and further, that this principle applies to actions to enjoin, as well as direct "appeals" authorized by statute.

We see no reason to depart from the ruling in *Munch* when, as is the case here, a party seeks a writ of mandamus pursuant to Chapter 32–34, N.D.C.C. Clearly, *Munch* does not support Mini Mart's contention that the "record" of the City Council proceedings in this case should have included transcribed and sworn testimony.

The City argues that the trial court's second memorandum decision can be read as holding that Mini Mart must be granted the retail beer license solely because the City Council produced an inadequate record of its proceedings. The City therefore contends that the judgment should be reversed. We disagree because we do not interpret the trial court's decision as so holding. The trial court stated that it had "read all of the statements of the aldermen regarding their thoughts in this matter, and however the Court views those statements, whether it agrees or disagrees with them, the Court finds them irrelevant to the disposition of this matter ...." It is clear from this statement that the court's decision was based on its conclusion that the City Council had gone beyond the bounds set by the Minot Code of Ordinances in denying Mini Mart's license application, and not on the conclusion that the City had preserved an inadequate record of its proceedings.

II

RESOLUTION NO. 77

 We next consider the City's contention that Resolution No. 77, which was passed on August 1, 1983, while court proceedings were still pending, justified its denial of Mini Mart's license application. In *Leonard v. Medlang*, 264 N.W.2d 481 (N.D.1978), this Court applied the general rule in equitable actions that, in the absence of special circumstances, a court will apply the law as it exists at the time of its decision. The district court considered the *Leonard* decision, but concluded that the resolution was a nullity in this case.

The City relies upon § 5–02–09, N.D.C.C., which provides in part pertinent to this case that a "local governing body *by ordinance or resolution* may regulate or restrict the operation" of liquor licensees. [Emphasis added.] The district court determined that the word "resolution" in the statute was intended to refer only to the mode by which counties regulate when they act as a local governing body. We need not decide the issue on this basis because we conclude that the City's attempt to amend its existing ordinances by way of resolution was ineffective.

Section 40–11–09, N.D.C.C., provides in pertinent part:

"*40–11–09. Enactment and revision of ordinances.* The executive officer of a municipality may appoint, by and with the advice and consent of the governing body of the municipality, one or more competent persons to prepare and submit to the governing body for its adoption or rejection, *an ordinance for the revision or amendment of existing ordinances* or for the enactment of new and additional ordinances for such municipality.... Such revision, including any additional ordinances and amendments to existing ordinances contained therein, may be passed as a single ordinance and may be published in pamphlet or book form, by and under the authority of the governing body of the municipality, and shall be valid and effective without publication in a newspaper or posting." [Emphasis added.]

Section 40–11–09, N.D.C.C., is, in effect, a codification of the general rule that "a municipal ordinance cannot be amended or repealed by a mere resolution. To accomplish that result a new ordinance must be passed." 56 Am.Jur.2d *Municipal Corporations* § 411 (1971). *See also* 6 McQuillin, The Law of Municipal Corporations § 21.04 (3d ed. rev. 1980); *Lee v. City of Taylor*, 63 Mich.App. 221, 222–223, 234 N.W.2d 483, 484 (1975); *Dolan v. Borough of Tenafly*, 75 N.J. 163, 169, 380 A.2d 1119, 1122 (1977); *Cross v. Soderbeck*, 94 Wis.2d 331, 336–340, 288 N.W.2d 779, 781–782 (1980).

This Court has previously recognized the distinction between an ordinance and a res-

olution and that a resolution is of a lower status than an ordinance. *See Mitchell v. City of Parshall*, 108 N.W.2d 12, 14 (N.D. 1961).

Thus; regardless of whether or not a municipality is authorized by § 5–02–09, N.D.C.C., to regulate in the first instance by resolution, we believe that once a municipality has taken upon itself to regulate by means of an ordinance scheme, § 40–11–09 requires that amendments to such ordinances be accomplished by another ordinance rather than by resolution. Because the procedural requirements of §§ 40–11–01 and 40–11–02, N.D.C.C., were not met, the resolution was ineffective as an amendment to the City's existing liquor licensing ordinances.

■ The City argues, however, that the resolution is not amendatory but is merely supplementary because the provisions of the resolution are not inconsistent with or contradictory to Chapter 5 of the Minot Code of Ordinances. We do not agree. "Amendment" has been defined as:. "To change or modify for the better. To alter by modification, deletion, or addition." *Black's Law Dictionary* 74 (5th ed. 1979). It is clear from the substance of the resolution, when viewed in light of the ordinance which was passed on first reading and is specifically labeled as an amendment, that the sole purpose of Resolution No. 77 was to amend Minot's existing liquor license ordinances.

We conclude that the trial court did not err in refusing to consider Resolution No. 77 when it reached its decision in this case.[4]

III

UNWRITTEN CRITERIA

The City next contends that the trial court erred in ruling that the City Council could not rely upon unwritten criteria in denying Mini Mart's application for a retail beer license. The trial court determined that although the City Council was vested by state law with discretion in deciding whether or not to grant liquor licenses, it must nevertheless by way of ordinance reserve the right to exercise that discretion and state the criteria it will use in granting or denying a liquor license. The City relies upon this Court's decisions in *Thielen v. Kostelecky*, 69 N.D. 410, 287 N.W. 513 (1939), and *Smith v. City of La Moure*, 77 N.D. 658, 44 N.W.2d 789 (1950), for the proposition that a municipality discharging a discretionary function vested in it by state law may make an ad hoc decision without the benefit of previously an-

---

4. Because we have concluded that Resolution No. 77 was ineffective, we need not address the City's contention that the resolution meets the "test of reasonableness."

We further note that we were informed during oral arguments that Ordinance No. 2604 was passed by the City Council on second reading after judgment was entered in this case. The record certified to this Court does not contain, and counsel have not provided us with, a copy of the ordinance as finally enacted. *See* § 40–11–02, N.D.C.C., ["After the first reading and before final passage, an ordinance may be amended."]

The City has not urged on appeal that the ruling in *Leonard v. Medlang*, 264 N.W.2d 481 (N.D.1978), that the law in effect at the time of the court's decision governs, should be applied by this Court when the change in the law has occurred during the pendency of the appeal. The issue has caused some divergence of opinion in other jurisdictions. *E.g.*, Annot., 111 A.L.R. 1317 (1937 and Supplements) ["Change of law after decision of lower court as affecting

decision on appeal or error."]; 82 Am.Jur.2d *Zoning and Planning* § 330 (1976).

We have stated that "when an appellate court proceeds on a theory which was not advanced by the parties there is no fair opportunity for the litigants to meet the issues, and there is an increased chance that the appellate court will commit error." *Center State Bank, Inc. v. State Bank. Bd.*, 276 N.W.2d 132, 134 (N.D.1979). Because this question has been neither briefed nor argued before our Court, we decline to address the issue or the threshold issue of whether or not it would be proper for this Court to take judicial notice of Ordinance No. 2604 as it was finally enacted. *See, e.g.*, §§ 40–11–08 and 40–18–19, N.D.C.C.; Rule 201, N.D.R.Ev.

Should it be presumed that the provisions of Ordinance No. 2604 could serve as the basis for a Rule 60(b), N.D.R.Civ.P., motion upon the filing of our decision in this case, see this Court's discussions in *Small v. Burleigh County*, 239 N.W.2d 823, 828–830 (N.D.1976), and *Gajewski v. Bratcher*, 240 N.W.2d 871, 888–892 (N.D.1976).

nounced and written criteria as long as it acts reasonably.

In *Kostelecky*, the plaintiff instituted a mandamus proceeding to compel the Dickinson City Commission to issue him a retail alcoholic beverage license. The City Commission denied his application in part because the maximum number of liquor licenses allowed by ordinance had already been issued. Another reason given by the Commission was that the premises were not a proper place for the sale of alcohol because the only doorway to the building faced an alley which had excessive automobile traffic. The Commission reasoned that the location of the premises "would be dangerous and detrimental to the safety and welfare of the citizens...." *Kostelecky, supra*, 69 N.D. at 415, 287 N.W. at 516. The trial court had held that "where an application for a retail liquor license, in due form and accompanied by the required license fee, is presented by a 'person having a legal and bona fide residence in, and being a citizen of the State of North Dakota', a City Commission has no authority to refuse to issue a license." *Kostelecky, supra*, 69 N.D. at 416, 287 N.W. at 516.

This Court reversed, stating:

"The Liquor Control Act does not evidence an intention that the governing body of a city shall serve merely as a rubber stamp for the approval of applications for licenses. It evidences an intention *to charge such governing body with duties which require the exercise of judgment and discretion....*" *Kostelecky, supra*, 69 N.D. at 417, 287 N.W. at 516.

The Court continued, however, stating:

" 'When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority *to make all such ordinances as may be necessary to make the grant of power effectual*, and to

preserve the public peace, good order and security against dangers arising from the traffic in such liquors. It is only required that such ordinances should be within the scope of the powers granted, and not unreasonable, unjust, or unduly oppressive, or unfairly discriminating.' 33 C.J. pp. 522–524.

"The power 'to regulate the retail sale of alcohol and alcoholic beverages' conferred upon the governing board of a city includes the power *to prescribe such reasonable rules and impose such reasonable restrictions as to the manner and circumstances in which the business shall be conducted as will tend to promote order and protect the public from harm....* The power 'to regulate the retail sale of alcohol and alcoholic beverages' vests the governing board of a city with authority to prescribe reasonable rules concerning the premises where the business is to be carried on ... and to refuse to issue a license where the proposed place of business is unfit according to the prescribed standards; ...*" [Citations omitted, emphasis added.] *Kostelecky, supra*, 69 N.D. at 417–418, 287 N.W. at 517.

Thus, the Court in *Kostelecky* recognized that municipalities have been given the power by the State to exercise judgment and discretion in the granting or denial of liquor licenses. However, the Court also pointed out that, in order to make the grant of such power effectual, the municipality must enact ordinances reserving the legislative grant of discretion and prescribing reasonable rules and standards to govern the exercise of that discretion.[5] The city in *Kostelecky, supra*, 69 N.D. at 414, 287 N.W. at 515, had reserved its power by ordinance.

Although it is unclear in the case of *City of La Moure* whether or not the City had

---

**5.** This proposition accords with the provisions of § 40–05–01, N.D.C.C. In addition to the power to regulate and license the sale of alcoholic beverages, [*see* § 40–05–01(29), N.D.C.C.], municipalities have been given the power "[t]o enact or adopt all such ordinances, resolutions, and regulations, not repugnant to the constitu-

tion and laws of this state, as may be proper and necessary *to carry into effect the powers granted to such municipality or as the general welfare of the municipality may require*, and to repeal, alter, or amend the same." § 40–05–01(1), N.D.C.C. [Emphasis added.]

by ordinance adequately reserved its power,[6] a close reading of the case reveals that the decision does not weaken the holding in *Kostelecky*. It appears that in *City of La Moure* there were four qualified applicants for one liquor license. After noting that each applicant had been afforded full opportunity to be heard before the city council, the Court stated there was no basis for finding that the city council had "acted otherwise than such as they concluded would be for the best interests and welfare of the people ...." *City of La Moure, supra*, 77 N.D. at 675, 44 N.W.2d at 798.[7]

There is a significant difference between a situation where there are several applicants which have met the requirements set forth by ordinance and a decision must be made between them for one available license, and where, as in the instant case, the sole applicant has met the criteria set forth by ordinance for the only available license. The former situation necessarily requires that the municipality exercise additional discretion in order to choose the recipient of the available license and to therefore remain within the numerical limits on liquor licenses the municipality has set.

In *ABC Liquors, Inc. v. City of Ocala*, 366 So.2d 146, 149, 151 (Fla.App.1979), the court stated that:

> "The dispensation of alcoholic beverages is a highly regulated industry. Nevertheless the constitutional guaranty of equality before the law assures that every citizen, whether natural or corporate, be treated equally. To assure that right, regulations must be standard and criteria reasonably certain. An applicant for approval of a location must be in a position to determine the requirements and must be afforded an opportunity to comply with them. The requirements must be of uniform application. Once the requirements are met the governing body may not refuse the application....

> \* \* \* \* \* \*

> "The City ... by virtue of the here challenged ordinance has chosen to permit, on a case by case basis, the City Council and Mayor to decide when and where a retail vendor of alcoholic beverages, duly licensed by the state, may open and operate his establishment.... The approval of the Council and Mayor, required in addition to the proper zoning, is granted or denied on a case by case basis without any standards or criteria to guide either the applicants or the City officials. Such a regulatory scheme does not comport with constitutional standards." [Footnotes omitted.]

*Accord Hernandez v. Board of Com'rs of Camden County*, 242 Ga. 76, 77–78, 247 S.E.2d 870, 871–872 (1978); *Mickelsen v. City of Rexburg*, 101 Idaho 305, 308, 612 P.2d 542, 545 (1980); *State ex rel. Keeven v. City of Hazelwood*, 585 S.W.2d 557, 561 (Mo.App.1979); *Hovey v. Department of Revenue, Liquor Div.*, 659 P.2d 280, 284 (Mont.1983); *Bond v. Nebraska Liquor Control Com'n*, 210 Neb. 663, 666–667, 316 N.W.2d 600, 602 (1982).[8]

---

**6.** The court noted, however, that the city had adopted a "comprehensive ordinance pertaining to the retail sale of liquors." *City of La Moure, supra*, 77 N.D. at 664, 44 N.W.2d at 792.

**7.** Although state law has changed somewhat since the time *Kostelecky* and *City of La Moure* were decided, *i.e.*, liquor license applicants are now required to obtain a license from the attorney general as well as the local governing body, we do not believe this renders those decisions obsolete in the context of the present case. Section 5–02–02(5), N.D.C.C., requires that "[t]he applicant for a state license must have first secured a local license." Thus, although the power of a municipality to grant a license may be curtailed in a practical sense because of the requirement that the licensee also obtain a license from the attorney general, the authority of a municipality to deny a license would seem to be unimpaired by this requirement.

**8.** The City relies upon *Wong v. City of Riverview*, 126 Mich.App. 589, 337 N.W.2d 589 (1983), in which the plaintiff, who sought a liquor license from the city, contended that the city had failed to promulgate guidelines governing its decision before issuing the license. The Court ruled that "[a] city has not acted arbitrarily or capriciously, even though having failed to adopt guidelines, when the reviewing court can otherwise determine on the record that the decision not to issue the liquor license to a first-time

■ We conclude that the City could not rely totally upon unwritten standards and criteria in denying Mini Mart, as the sole applicant, the remaining retail beer license. To allow a licensing authority to do so would open the door to unjust favoritism and discrimination. We do not suggest that any favoritism or discrimination has been exhibited by the City Council in this case, or that the stated concerns of the Council members are without merit. However, it is the *opportunity* for the exercise of arbitrary discrimination by municipal authorities between citizens who comply with the prescribed regulations, and not only the fact itself, which renders the use of unwritten ad hoc criteria objectionable.

■ We do not intend to imply that a municipal liquor licensing ordinance scheme must specifically address all conceivable factual variations which might arise and which would legitimately and reasonably support a decision that a particular license ought not issue. We hold only that a municipality must reserve its legislative grant of discretion through the use of written criteria which both adequately inform applicants of the standards and policies to be contemplated by the municipality, and adequately guide the licensing authority in arriving at its decision. Aside from any constitutional considerations, fundamental fairness would seem to require nothing less.

We conclude that, under the facts in the instant case, the trial court was correct in ruling that the City could not rely on unwritten and unspecified criteria in denying Mini Mart's application for a retail beer license.

## IV

### CONSTRUCTION OF § 5–28(e)

Finally, the City argues that the trial court too narrowly construed the general welfare and safety clause of § 5–28(e) of the Minot Code of Ordinances. Section 5–28(e), which is quoted in full in footnote 1, *supra*, generally provides that a license application shall be denied if the city council "shall feel that the *structure* is not sufficient for the general welfare and safety of the general public...." [Emphasis added.] The trial court ruled that this provision could not be relied upon by the City Council to justify its consideration of the demography of the area, Mini Mart's location, and the public mood regarding driving while under the influence of alcoholic beverages in denying Mini Mart's license application.

■ Generally, the rules of construction applicable to state statutes apply in the construction of municipal ordinances. *City of Minot v. Central Ave. News, Inc.*, 308 N.W.2d 851, 862 (N.D.), *appeal dismissed*, 454 U.S. 1117, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981). We are instructed by § 1–02–03, N.D.C.C., to construe words and phrases according to their context, the rules of grammar, and the approved usage of the language. Section 1–02–02, N.D.C.C., further provides that, unless a contrary intention plainly appears, words used in a statute are to be understood in their ordinary sense.

■ Applying the above-stated rules to § 5–28(e) of the Minot Code of Ordinances, we agree with the interpretation given it by the trial court. The ordinance clearly and specifically authorizes the City Council to inquire only into possible structural deficiencies with the premises which might affect the welfare and safety of the general public.

The City argues in effect that it was not the intent of the City Council when it enacted § 5–28(e) to limit its inquiry to structural deficiencies. However, we believe that to hold that § 5–28(e) authorizes the City to consider such concepts as the "public

applicant was neither arbitrary nor capricious." *Wong, supra,* 126 Mich.App. at 594, 337 N.W.2d at 591.

We believe *Wong* is distinguishable from the instant case. In *Wong,* it appears that two applicants sought one available license. In addition, the Court in *Wong* noted that the plaintiff's premises were 209 feet from a Baptist Church and by state statute, a liquor license could not be issued to an applicant whose premises were located within 500 feet of a church or school.

mood" would constitute, even under a liberal construction, an unreasonable extension of the specific terms of the ordinance. Section 1-02-05, N.D.C.C., directs that "[w]hen the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

We conclude that the trial court did not err in its construction of the ordinance.

We have stated that "[i]f a license applicant believes that he has been denied a license because the licensing official has introduced an impermissible element of discretion into the licensing process, the proper remedy would lie in an application for a writ of mandamus." *Central Ave. News, Inc., supra,* 308 N.W.2d at 861-862. We conclude that the trial court did not err as a matter of law in ordering the writ of mandamus to issue, and further, that the trial court did not abuse its discretion in so ordering in the instant case.

The judgment is affirmed.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.