**FARGO BEVERAGE COMPANY, a North Dakota Corporation, Plaintiff and Appellant,**

v.

**CITY OF FARGO, a North Dakota Municipal Corporation, Defendant and Appellee,**

**and**

**Dacotah Liquors, Inc., a North Dakota Business Corporation and David A. Lundeen, Defendants.**

Civ. No. 890340.

Supreme Court of North Dakota.

July 31, 1990.

---

Vinje Law Office, Fargo, for plaintiff and appellant; argued by Edmund G. Vinje II, Fargo.

Solberg, Stewart, Boulger & Miller, Fargo, for defendant and appellee; argued by Wayne O. Solberg, City Atty., Fargo.

VANDE WALLE, Justice.

Fargo Beverage Company (FBC) has appealed from a district court judgment denying its application for a writ of mandamus and dismissing its complaint in a proceeding arising out of the denial by the City of Fargo (the City) of FBC's application for the transfer to it of a Class B alcoholic beverage license held by Dacotah Liquors, Inc. (Dacotah). We affirm.

FBC entered into an agreement for the purchase of Dacotah. The purchase agreement was conditioned upon the City's approval of the transfer of Dacotah's Class B alcoholic beverage license to FBC by July 1, 1989. At the conclusion of the June 5, 1989, hearing on FBC's application to transfer the license, the City denied the application. The City based its denial on §§ 25–1508(C)(12), 25–1508(E), and 25–1509(J) of the City's ordinances. Section 25–1508 provides in part:

"25–1508. *Issuance and transfer of licenses—Hearing required.—*

\* \* \* \* \* \*

"C. At the time of the hearing on the application, the commission shall, in its discretion, determine if the issuance or transfer of the license is in the best interests of the public health, safety, morals and general welfare of the community. Among the factors to be considered by the commission in granting or denying a license or a transfer are the following:

"1. The ratio of existing licenses to population as set forth in subsection 6 hereof.

"2. The convenience of police regulation.

"3. Public health and sanitation.

"4. The proximity of other businesses licensed to sell alcoholic beverages.

"5. The proximity of schools, churches, funeral homes, public buildings or buildings used by or for minors.

"6. Protests of neighboring property owners or occupants.

"7. Zoning regulations.

"8. Interference with neighboring properties.

"9. Suitability of premises for sale of alcoholic beverages.

"10. Public convenience and necessity.

"11. Number of such licenses already in existence.

"12. Economic impact upon other such licensed premises.

"13. Sufficiency of the application required by section 25–1504 of this article.

"14. Recommendations and reports of appropriate city officials including the chief of police, chief of the fire department, building inspector and health officer.

\* \* \* \* \* \*

"E. No license shall be approved by the Commission for the sale of alcoholic beverages on premises where other goods and commodities are sold, consumed or dispensed, except as permitted by Subsection I of Section 25–1509 of this Article."

Section 25–1509 provides in part:

"25–1509. *Restrictions on sale, service or dispensing of alcoholic beverages.—*

\* \* \* \* \* \*

"I. No licensee, his agent or employee shall sell or serve, or permit to be sold or served on the licensed premises any food other than prepackaged, confectionary items such as peanuts, potato chips and similar items, and prepackaged sandwiches, pizza and similar food products which are prepared and packaged off the licensed premises; provided, that this prohibition shall not apply to licensed establishments which meet all requirements for and are licensed as a Grade A restaurant pursuant to the provisions of Article 13–04 of the Fargo Municipal Code.

"J. No licensee, his agent or employee shall sell or dispense any goods, com-

modity or merchandise or permit the sale or dispensing of any goods, commodity or merchandise on the licensed premises or on adjoining premises which are a part of the same business complex, except as permitted pursuant to subsection I of this section."

On July 10, 1989, FBC sought a writ of mandamus compelling the City to transfer Dacotah's license to FBC. The district court denied FBC's application for a writ of mandamus and dismissed the complaint. FBC appealed from the judgment.

FBC contends: (1) that §§ 25–1508(C)(12), 25–1508(E), and 25–1509(J) were discriminatorily enforced against FBC; (2) that §§ 25–1508(C)(12), 25–1508(E), and 25–1509(J) violate fundamental fairness and are unconstitutionally vague; (3) that denial of the requested license transfer, based upon §§ 25–1508(C)(12), 25–1508(E), and 25–1509(J) was arbitrary, capricious, unreasonable and predicated on grounds not warranted by law; (4) that the district court made clearly erroneous findings of fact; and (5) that the matter should be remanded for a determination of the compensatory damages to which FBC is entitled and to determine whether the City is required to issue a license to FBC.

■ A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and the denial of a writ will not be overturned unless the trial court abused its discretion. *Coles v. Glenburn Public School District No. 26*, 436 N.W.2d 262, 263 (N.D.1989). *See also Old Broadway Corp. v. Backes*, 450 N.W.2d 734 (N.D.1990); *Mini Mart, Inc. v. City of Minot*, 347 N.W.2d 131 (N.D.1984). In this case, as in *Old Broadway Corp. v. Backes, supra*, 450 N.W.2d at 736, "we affirm because we are not convinced that the trial court abused its discretion."

■ Section 40–05–01(29), N.D.C.C., authorizes the City to "regulate and license the sale of alcoholic beverages." The power to regulate a business includes the authority to prescribe reasonable rules, regulations, and conditions under which the business may be conducted or permitted. *Thielen v. Kostelecky*, 69 N.D. 410, 287 N.W. 513, 516 (1939). "Leaving the manner and means of exercising municipal powers to the discretion of municipal authorities implies a range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary." *Haugland v. City of Bismarck*, 429 N.W.2d 449, 454 (N.D.1988).

### 1. §§ 25–1508(C)(12) and 25–1509(J)

■ At the hearing before the Fargo City Commission, there was little, if any, evidence introduced relating to § 25–1508(C)(12): "Economic impact upon other such licensed premises." Dan Coburn, President of FBC, testified that "we will price aggressively. We will offer a large selection. We will offer good service. And we will abide by the law." In response to a question from one of the commissioners, FBC's attorney stated:

"We don't see any long-term adverse economic impact on the liquor industry because this is a transfer of a license and so we're not adding a new outlet. And because of the fact that we pointed out here that this is a very highly concentrated commercial retail area and the city is expanding to the south, we don't see that as posing a problem. The city is growing. We're not even adding another store. We're just placing this particular one at another location. So, no, we don't see any adverse economic impact."

In opposing the license transfer, a witness on behalf of the Fargo Beverage Dealers testified:

"You don't have to go farther than Moorhead to see what chain operations have done. At one time there was 17 independent dealers in Moorhead. Now there are eight since the chains came in.

"We are fortunate enough to enjoy a healthy business climate. Local wholesalers make a profit, retailers make a profit and the consumers buy products at fair prices. Why change?"

In seconding a motion to deny the transfer request, one commissioner cited §§ 25–

1508(E) and 25–1509(J) and said that the "burden should be really on the applicant to prove to us that there will not be an economic impact on the existing premises."

The trial court found that the City "relied primarily upon ... Section 25–1508 of the ordinances of the City of Fargo." Section 25–1508(C)(12) provides that economic impact on other licensed premises is "[a]mong the factors to be considered by the commission." The ordinance does not impose a burden of proof. In *Matter of Annexation of a Part of Donnybrook Public School District No. 24*, 365 N.W.2d 514 (N.D.1985), we construed § 15–53.1–06, N.D.C.C., which provided for consideration in school district annexation cases of "evidence with respect to any of [several listed] factors." The district court found that the statute had not been complied with because no findings had been made on several of the listed factors. We said, at 365 N.W.2d 523–524, that there need not be evidence on all the factors, and that:

"A petitioner for annexation has the burden of introducing evidence on as many factors as are necessary to establish a prima facie case for approval of his petition. A petitioner who does not introduce evidence on some factors runs the risk that the petition will not be approved.

"Opponents of a petition for annexation, on the other hand, have a burden to introduce evidence to overcome any prima facie case for approval established by the petitioner. Opponents who do not introduce evidence on some factors run the risk that the petition will be approved."

Those principles are applicable here. Thus, FBC did not have a burden to prove that there would be no economic impact on other licensees.

▮ Section 25–1509(J) is a restriction on licensees. It is not a factor to be considered in the issuance or transfer of licenses. A license transfer application may not, therefore, properly be denied on the basis of § 25–1509(J).

In light of the foregoing considerations and because, as we will explain later in this opinion, we conclude that FBC's request was properly denied on the basis of § 25–1508(E), we deem it unnecessary to further consider any of FBC's arguments with regard to §§ 25–1508(C)(12) and 25–1509(J).

### 2. discriminatory enforcement of § 25–1508(E)

▮ Relying on *Mini Mart, Inc. v. City of Minot*, 347 N.W.2d 131 (N.D.1984), and *City of Hueytown v. Jiffy Chek Co.*, 342 So.2d 761 (Ala.1977), FBC contends that it has been denied equal protection of the laws by the City's discriminatory enforcement of § 25–1508(E) against FBC. In support of this contention, FBC asserts that the City has issued a Class B license to the Radisson Hotel and has renewed other licenses "on premises where other goods and commodities are sold, consumed or dispensed" contrary to § 25–1508(E) since that ordinance was adopted.

*Mini Mart, Inc. v. City of Minot, supra,* 347 N.W.2d at 140, *quoting ABC Liquors, Inc. v. City of Ocala*, 366 So.2d 146, 149 (Fla.App.1979), states the general principle that persons are to be treated equally in the alcoholic beverage industry:

"The dispensation of alcoholic beverages is a highly regulated industry. Nevertheless the constitutional guaranty of equality before the law assures that every citizen, whether natural or corporate, be treated equally."

In *City of Hueytown v. Jiffy Chek Co., supra,* a statute prohibited the location of stores selling table wines within one mile of schools or eleemosynary institutions. Hueytown issued table wine licenses to three other businesses located within one mile of an eleemosynary institution, but denied a license to Jiffy Chek, which was within one mile of a school. The court held that Jiffy Chek had been denied equal protection of the laws:

"The uncontradicted evidence shows Jiffy Chek is situated no differently than the other merchants who were issued table wine licenses by the City.... Jiffy Chek has been denied equal protection of the laws.

"... The essence of the theory of equal protection of the laws is that all similarly situated be treated alike.... Refusal to grant equal treatment in conferring certain rights, here a table wine license, amounts to denial of equal protection of the laws...."

342 So.2d at 762. Thus, persons who are similarly situated should be treated equally. Because Jiffy Chek was "situated no differently" than the three merchants issued licenses, the denial of a license to Jiffy Chek was a denial of equal protection.

FBC's discriminatory enforcement argument rests on disparate treatment of FBC and others with which FBC is similarly situated. It is undisputed that the City issued a license to the Radisson Hotel after § 25–1508(E) was adopted. It is also undisputed that since § 25–1508(E) was adopted, the City has acted as though it had also adopted a "Grandfather Clause," by renewing licenses "on premises where other goods and commodities are sold, consumed or dispensed."

A large hotel with an alcoholic beverage license where other goods are sold as an incidental convenience for hotel guests is not similarly situated with a package store selling alcoholic beverages on premises where other goods are sold. Significantly, hotels, such as the Radisson, with a minimum of 100 rooms are exempt from the City's numerical limitation on the number of licenses and are automatically entitled to a license under another ordinance. Thus, the City's issuance of a Class B license to the Radisson Hotel, but not FBC, was not a denial of equal protection.

With regard to licenses on premises where other goods are sold that were issued before adoption of § 25–1508(E) and which have since been renewed, FBC argued in its brief:

"Even if it is assumed, for purposes of argument, that the ordinances of the City of Fargo provide for the 'grandfathering' in of existing licenses, such 'grandfathering' is unconstitutional. The purpose of the ordinances is to prohibit the sale of alcoholic beverages in close proximity to businesses, including grocery stores, that sell goods, commodities and merchandise. But that purpose would be frustrated by grandfathering in existing licenses because there is no provision in the ordinances that those licenses would ever be terminated. Such 'grandfathering' discriminates by denying licenses to those who *would* sell alcoholic beverages, while continuing to indefinitely permit and relicense sales of alcoholic beverages in close proximity to other businesses by those *already* doing so." (Emphasis in original.)

We disagree. In *Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy*, 219 N.W.2d 140, 148 (N.D. 1974), this court expressed the "view that most corrective legislation necessitates a Grandfather Clause" and held in Syllabus ¶ 4 that the "[m]ere existence of a Grandfather Clause within a statute should not of itself make the statute unconstitutional."

An evident purpose of § 25–1508(E) is to reduce the incidence of impulse purchases of alcoholic beverages by persons shopping for other goods. Preventive legislation need not "work a perfect cure. It is enough that the questioned Act has a manifest tendency to cure or at least make the evil less." Syllabus ¶ 1, *Snyder's Drug Stores, Inc., supra*. It is apparent that with regard to impulse purchases of alcoholic beverages, application of § 25–1508(E) to the issuance of new licenses or transfers of existing licenses, even though not applied to renewal of existing licenses, "has a manifest tendency to cure or at least make the evil less."

A liquor license confers no vested rights which a licensing authority may not revoke or terminate [*Federal Savings & Loan Ins. Corp. v. Morque*, 372 N.W.2d 872 (N.D. 1985)], and is "subject to changing regulations or even to legislative cancellation" [*City of Miami Beach v. Deauville Operating Corp.*, 129 So.2d 185, 187 (Fla.App. 1961)]. However, "[v]ested rights may exist if a landowner has made substantial expenditures in reliance on a zoning ordinance." *Fairmount Twp. Bd. of Supervisors v. Beardmore*, 431 N.W.2d 292, 295 n. 4 (N.D.1988). In adopting § 25–1508(E),

the City could reasonably consider the investment that existing licensees had made in reliance on continuing renewals of their licenses issued under the existing ordinances and the burden that application of the new ordinance to existing licensees would pose. Under the circumstances presented in this case, the City's application of § 25–1508(E) to the issuance of future licenses and to future transfers of existing licenses but not to renewals of existing licenses falls within the "range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary." *Haugland v. City of Bismarck, supra,* 429 N.W.2d at 454. We conclude that FBC was not denied equal protection of the law by discriminatory enforcement of § 25–1508(E).

*3. fundamental fairness and vagueness*

█ FBC contends that unless the word "premises" in § 25–1508(E) is construed to mean "licensed premises," the section "is not fundamentally fair because the commissioners could use Section 25–1508(E) to discriminate between equally situated applicants." FBC also contends that the provision is unconstitutionally vague because "commissioners and others can only guess at the meaning of 'premises'." We are not persuaded that "premises" in § 25–1508(E) means "licensed premises." Section 25–1508(E) is ambiguous with regard to its full intended reach. However, FBC's proposal to sell alcoholic beverages in a store located in the same building as a grocery store, from which FBC's licensed premises were to be separated only by a common walkway, clearly falls within "premises where other goods and commodities are sold." *C.f. Olson v. City of West Fargo,* 305 N.W.2d 821 (N.D.1981) [cabaret ordinance not unconstitutionally vague]. We need not determine if § 25–1508(E) would be unfair or vague when applied to other circumstances not present here.

This also disposes of FBC's argument that because "premises" in § 25–1508(E) means "licensed premises" and there was no evidence that other goods and commodities were to be sold, consumed or dispensed on the licensed premises, the City "acted arbitrarily, capriciously, unreasonably and on a ground not warranted by law in denying the transfer based upon Section 25–1508(E)."

*4. clearly erroneous findings of fact*

█ The trial court found: "That since the enactment of ... [§ 25–1508(E) ] on April 23, 1984, no alcoholic licenses have been issued or transferred wherein alcoholic beverages are sold on premises where other goods or commodities are sold, consumed, or dispensed." FBC argued that this finding of fact is clearly erroneous because the Radisson Hotel was issued a license in 1985. Because the sale of other goods in the Radisson Hotel is merely an incidental convenience for its guests, and it has 100 or more rooms which automatically entitles it to a license under another ordinance and exemption from the City's numerical limitation on the number of licenses, we deem the Radisson Hotel's license to be irrelevant to FBC's application.

█ The trial court found: "That the Board of City Commissioners of the Defendant City of Fargo clearly interprets the word 'premises' as a business complex, shopping center, or shopping mall." FBC contends that this finding is clearly erroneous because there is no evidence to support it. Carol Kraft, Deputy City Auditor, who said in a deposition that she was "familiar with the procedures for the issuing or transferring of licenses for the sale of alcoholic beverages," stated in an affidavit:

"4. Since April 23, 1984, no Class B license has been issued nor has a transfer been approved, for a location within an existing business complex (i.e. shopping center or shopping mall)."

We are not convinced that a mistake has been made. The finding is, therefore, not clearly erroneous.

*5. remand*

FBC contends that because injunctive relief is now impossible, the action must be remanded for a determination of the compensatory damages to which it is entitled

and to determine if the City may be required to issue it a license.

For the reason stated above, however, we conclude that the City acted properly in denying the requested license transfer and that the district court did not abuse its discretion in denying FBC's application for a writ of mandamus and in dismissing FBC's complaint.

The judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.